# Exhibit 1

**SALTZ, MONGELUZZI, & BENDESKY, P.C.**
BY: ROBERT J. MONGELUZZI/ ANDREW R.
DUFFY/ KRISTEN M. FEDEN / MARNI BERGER   **ATTORNEYS FOR PLAINTIFF**
IDENTIFICATION NO.:  36283/77121/309433
1650 MARKET STREET, 52ND FLOOR
PHILADELPHIA, PA  19103
(215) 496-8282

*Filed and Attested by the Office of Judicial Records 11 AUG 2023 09:22 am B. MERCEDES*

| | |
|---|---|
| **JANE DOE A.F.,** *a pseudonym*<br>1650 Market Street<br>52nd Floor<br>Philadelphia, PA 19103<br><br>                **Plaintiff,**<br><br>    v.<br><br>**LYFT, INC.**<br>3945 Frankford Ave.,<br>Philadelphia, PA 19124<br><br>    and<br><br>**NTIAMOAH BROWN**<br>5455 Kings Hwy., Apt. 2F<br>Brooklyn, NY 11203-6045<br><br>                **Defendants.** | **PHILADELPHIA COUNTY**<br>**COURT OF COMMON PLEAS**<br><br><br>**NO. 230800834**<br><br>**JURY TRIAL DEMANDED** |

## NOTICE TO DEFEND

| "NOTICE | "AVISO |
|---|---|
|    "You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>   "YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.<br><br>THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.<br>     PHILADELPHIA BAR ASSOCIATION<br>     LAWYER REFERRAL and INFORMATION SERVICE<br>     One Reading Center<br>     Philadelphia, Pennsylvania 19107<br>     (215) 238-1701" |    "Le han demandado en corte. Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) días, a partir de recibir esta demanda y la notificación para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted. Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir culquier otra demanda o alivio solicitados por el demandante. Usted puede perder dinero o propiedad u otros derechos importantes para usted.<br><br>   USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PARGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL.<br>ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO. SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO.<br>     ASSOCIACION DE LICENDIADOS DE FILADELFIA<br>     SERVICO DE REFERENCA E INFORMACION LEGAL<br>     One Reading Center<br>     Filadelfia, Pennsylvania 19107<br>     Telefono: (215) 238-1701" |

## CIVIL ACTION COMPLAINT

Plaintiff, Jane Doe A.F. (hereinafter "Plaintiff"), by and through her counsel, Saltz, Mongeluzzi & Bendesky, P.C., claim of Lyft, Inc. ("Lyft"), and Ntiamoah Brown ("Brown") (collectively "Defendants"), sum in excess of $50,000.00 in damages, upon cause of action wherein the following are true:

## INTRODUCTION

1.  This case involves the violent sexual assault of a young woman who became one of hundreds of women to endure similar horrors after taking a Lyft rideshare. Lyft and other major companies in the ride-sharing services have been aware for years of the growing problem of sexual assaults in the context of the transportation services they provide.

2.  Outwardly Lyft promotes a care for the safety of its riders.

3.  Internally, Lyft chose to ignore the growing number of customers who have been sexually assaulted by their Lyft drivers.

4.  ***The assault in this case, and hundreds before it should have been prevented had Lyft spent the resources to use its own technology and to implement proper screening and training techniques at its disposal.***

5.  The cost for implementing proper safety measures, by Lyft's calculations, outweighed the life-altering and permanently destructive damage suffered by victims of sexual assaults.

6.  In this case, and many others involving Lyft drivers, the victims are haunted by the knowledge that the Lyft driver who attacked them has access to their home address, name, photograph, and other personal identifying information.

7.  This is a case involving the violent sexual assault of a young woman who experienced her worst nightmare when she was attacked and sexually assaulted by a stranger—her Lyft driver— and then left out on the dark streets of Philadelphia, to make her way home, alone, trembling, and

terrified.

## PARTIES

8.  Plaintiff, Jane Doe A.F., is an adult female and citizen and resident of the Commonwealth of Pennsylvania who was sexually abused by her Lyft driver, Defendant, Brown, when he raped Plaintiff on August 12, 2021.

9.  Given the allegations set forth in this Complaint, Plaintiff's name, date of birth and address are not contained in this Complaint and so as to protect her privacy, Plaintiff is referred to herein by the fictitious name of "Jane Doe A.F." or "Plaintiff."[1]

10.  Defendant, Lyft, Inc. (hereinafter "Defendant Lyft" or "Lyft"), is a foreign business corporation, registered with the Pennsylvania Department of State to do business in the Commonwealth of Pennsylvania, under entity number 4255720.

11.  Lyft is a ridesharing/transportation company, duly incorporated in the State of Delaware, headquartered at 185 Berry Street, Suite 5000 San Francisco, CA 94107, and can be served through its registered agent, Incorporating Services, LTD, at 600 North Second Street, Harrisburg, PA 17101.

12.  Defendant, Lyft, is registered to do business in the Commonwealth of Pennsylvania and regularly conducts general and/or habitual business activities in Philadelphia County, Pennsylvania, which directly furthers and/or are essential to its corporate objects, and maintains a local office at 3945 Frankford Ave., Philadelphia, Pennsylvania.

13.  Lyft passengers (a/k/a "customers" a/k/a "riders") pay Lyft a fee in exchange for safe transportation to their destination.

14.  Plaintiff, Jane Doe A.F., however, did not have a safe ride.

---

[1] Plaintiff's counsel will identify Jane Doe's identity and address to Defendants' counsel.

Case ID: 230800834

15.     Instead, Plaintiff, Jane Doe A.F., was a customer of Lyft when she was sexually assaulted by her Lyft driver, Defendant, Brown and, as a result, incurred injuries and damages of a sensitive and permanent nature as a result of the intentional and negligent acts and failures of Defendants as contained in this Complaint.

16.     Defendant, Brown Lyft Driver (hereinafter "Defendant-driver" or "Driver"), is an adult male residing at 5455 Kings Hwy, Apt. 2F, Brooklyn, NY 11203-6045.



17.     At all times relevant hereto, Driver was acting individually and as an employee, servant, partner in a joint venture and/or agent of defendant, Lyft, Inc., with Defendant, Lyft, Inc.'s, express, apparent and/or implied permission, authorization and/or consent.

18.     Unquestionably Lyft exercises a high level of control over its drivers, like Brown, by, *inter alia*, directing drivers where to pick up passengers, directing drivers where to drop off

3

Case ID: 230800834

passengers, determining price, being able to deactivate and/or terminate drivers at its sole discretion, and performing an integral role for Lyft's business.

19.     Lyft also decides the price or fare, which drivers receive the trip requests, and/or whether to refund or cancel a passenger's fare.

20.     Moreover, Lyft controls profit driven measures, such as advertising or price-setting measures.

## VENUE AND JURISDICTION

21.     Venue properly lies in Philadelphia County pursuant to Pa. R.C.P. No. 1006 and 2179(a)(2) because Lyft Defendants regularly conduct business in Philadelphia County, maintain a local office at 3945 Frankford Ave, Philadelphia, PA 19124, and this cause of action arose in Philadelphia County due to the sexual abuse forced upon Plaintiff while she was a passenger in Driver's vehicle.

22.     This Court has jurisdiction in that this is a claim for monetary damages exceeding the local rules for amounts in controversy, exclusive of interest, costs, and attorney's fees.

23.     The averments of the previous paragraphs are incorporated by reference as though fully set forth herein.

## FACTUAL ALLEGATIONS

24.     On August 12, 2021, at 1:14 a.m., Defendant Brown was scheduled to pick up Plaintiff and Plaintiff's friend from a venue located at 3900 Chestnut Street, Philadelphia, PA.

4

Case ID: 230800834



4.      When the Lyft ride arrived, Plaintiff and her friend got into the back of the Driver's car.

5.      Plaintiff's friend was dropped off at her residence at or around 1:23 a.m., leaving Plaintiff alone in Driver-defendant's car.

6.      As soon as Plaintiff's friend exited the vehicle, Driver-defendant began asking Plaintiff extremely inappropriate and harassing questions, making Plaintiff extremely uncomfortable.

7.      Defendant-driver continued to talk to Plaintiff and told her that he was going to pull over.

8.      Defendant-driver pulled the car to the side of the road and got into the back seat with Plaintiff.

9.      Defendant-driver proceeded to commit depraved acts against Plaintiff, tearing off her pants, forcing oral sex upon the young Plaintiff, all while ignoring her resistance.

5

Case ID: 230800834

10.     Sickened, distressed, utterly traumatized, and still unsure as to whether she was going to survive this horrific sexual assault, Plaintiff did all she could to survive.

11.     Defendant-driver then forced his penis into Plaintiff's vagina, raping her repeatedly.

12.     Terrified, disturbed, distraught, utterly shocked, crying, yet still trapped with a violent predator who had just viciously raped her, Plaintiff rolled over, and trembled onto the block, in the middle of the night, and thankfully, to her home.

13.     To this day, Plaintiff recalls hearing Defendant-driver's call laughter as she escaped from his car, telling her that he will see her tomorrow.

14.     Horrified, confused, shocked, and disturbed, Plaintiff sent a text to "Lyft Safety" to report the rape by Defendant-driver.

 

15.     Members of the Lyft Safety team replied to Plaintiff's messages, offering to have

Case ID: 230800834

the "escalation team" contact her via phone or email.

16.     Plaintiff chose to speak with the escalation team over the phone.



17.     During the phone conversation with the escalation team, Plaintiff described the horrendous abuse that Plaintiff was forced to suffer through.

18.     The escalation team informed Plaintiff that they would conduct an internal investigation into her allegations.

19.     Plaintiff did not invite, induce, ratify, implicitly consent, or comply with this sexual abuse.

20.     To the contrary, Plaintiff was mortified and in shock at Driver's actions, and the lack of action by Lyft.

21.     At all times material hereto, as a common carrier, Defendant Lyft individually and/or by Defendant-driver, owed a duty to Lyft passengers, such as Plaintiff, to transport and deliver them to their destination with the highest degree of care.

Case ID: 230800834

22.     At all times material hereto, Defendant Lyft individually and/or by Defendant-driver, had a duty to provide safe transportation services and to operate Lyft's business with an appropriate level of safety protection for passengers and the general public.

23.     In fact, Lyft markets itself on Rider Safety and commitment to Safety. With serval marketing images that directly target the safety of women:



***

---

[2] *See* https://www.lyft.com/safety/rider (last visited January 31, 2023).

8

Case ID: 230800834

# High safety standards



3

***

---
[3] *Id.*

Case ID: 230800834

# Rider safety tips



[4]

24.    At all times material hereto, Defendants were uniquely positioned to ensure the safety of passengers and members of the general public such as Plaintiff.

25.    At all times material hereto, Defendants failed to take steps to prevent the sexual assault of Plaintiff, despite knowledge of this risk of harm, and instead permitted horrific acts of sexual violence to be perpetrated against her.

26.    At all times relevant hereto, Defendant Lyft was responsible for Defendant-driver, who was employed and/or contracted by Lyft to provide transportation services to customers.

27.    At all times relevant hereto, Defendant Lyft was responsible for hiring, training and supervising Defendant-driver.

---

[4] *Id.*

Case ID: 230800834

28.     At all times relevant hereto, Defendant Lyft required Defendant-driver to identify himself as a Lyft driver, by way of a visible sign in his vehicle displaying "Lyft," and associating himself with Lyft on the ride-share application ("app")/platform.

29.     The assault described in this Complaint occurred while Defendant-driver was completing a ride, purchased on the Lyft platform, with a Lyft sign in the vehicle, and while both Defendants, Lyft and Driver, were receiving financial compensation for their transportation services.

30.     At all times relevant hereto, Defendant-driver was acting individually and as an employee, servant, partner in a joint venture, and/or agent of Defendant Lyft, with Defendant Lyft's express, apparent and/or implied permission, authorization and/or consent.

31.     Upon information and belief, at all times relevant hereto, Defendant-driver was acting with the express permission of and/or as a duly authorized agent, worker, servant, contractor and/or employee on behalf of Defendant Lyft, while within the course, scope and authority of their relationship, and was operating his vehicle on behalf of Defendant Lyft.

32.     At all times relevant hereto, Defendant Lyft was vicariously liable for the actions or inactions of their duly authorized agent, worker, servant, contractor and/or employee, Defendant-driver, under the doctrine of *respondeat superior.*

33.     At all times relevant hereto, Defendant Lyft was vicariously liable for the actions or inactions of its respective duly authorized agent, worker, servant, employee and/or contractor, Defendant-driver, including, but not limited to liability under §410, §411 and/or §414 of the Restatement (Second) of Torts.

34.     Defendant Lyft is also directly liable to Plaintiff, Jane Doe A.F., for its negligent hiring, supervision, training, and failures to implement and/or enforce appropriate safety policies.

11

Case ID: 230800834

35.     Defendant-driver is directly liable to Plaintiff, Jane Doe A.F., for his intentional and negligent acts of assault.

36.     Because of Defendants' misconduct, Plaintiff, Jane Doe A.F., suffered and will continue to suffer from physical bodily injuries, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

37.     Plaintiff, Jane Doe A.F., has and will incur expenses for medical and psychological treatment, therapy, and counseling.

38.     Defendants are liable for these damages as described more fully below.

39.     Due to the reckless nature of Defendants' conduct, and in light of their knowledge and disregard of the risk of harm that caused Plaintiff's damages, Plaintiff seeks both compensatory and punitive damages.

40.     Lyft partners with and employs automobile owners and drivers for the purposes of providing transportation services to people in Philadelphia, Pennsylvania for a fee.

41.     To utilize the service, a Lyft customer uses a smartphone application to request a ride in a motor vehicle.

42.     The Lyft app communicates with a Lyft driver who then picks up the customer in a vehicle that is identified as a Lyft vehicle and drives the customer to the passenger's destination.

43.     The passengers pay Lyft a fee in exchange for **safe** passage to their destination.

44.     Lyft receives a credit card payment from the customer at the end of the ride for the entirety of the fare, retains a portion of the fare, and then remits a percentage to the driver who transported the customer.

45.     For this process to work, Lyft's drivers are an essential component of Lyft's business of providing transportation services to customers.

Case ID: 230800834

46.     Lyft Drivers, including, but not limited to, Defendant-driver, can apply to be a driver by logging into the Lyft app or web-based portal and providing information about themselves and their vehicles.

47.     All that is required to apply to become a Lyft driver is a driver's license, one (1) year of driving experience, to be a minimum age of twenty-five (25), a DMV (but not fingerprint) background check, proof of insurance, registration and a vehicle inspection at an auto shop not affiliated with Defendant Lyft.[5]

48.     Lyft is in exclusive control of who can use the Lyft app as a driver.

49.     Only approved, registered users can use the Lyft app to prearrange transportation services.

50.     Upon information and belief, almost all online applicants of Defendant Lyft are approved to become Lyft drivers.

51.     Upon information and belief, Defendant Lyft drivers are hired without any real screening process; drivers fill out an application online and are expected to self-report any criminal or traffic violation history.

52.     There is no interview of the prospective driver, no adequate background check or biometric fingerprinting required by Defendant Lyft. In fact, Defendant Lyft refuses to conduct fingerprinting.[6]

53.     Defendant Lyft lacked a meaningful background check process, and because of this, there has been a growing problem of sexual assault occurring during Lyft rides.

---

[5] *See What you need to drive with Lyft in Philadelphia*, Lyft.com, https://www.lyft.com/driver/cities/philadelphia-pa/driver-application-requirements (last visited January 31, 2023).

[6] *See Community Safety Report Appendix*, at 7.

Case ID: 230800834

54.     In 2021, Defendant Lyft released a *Community Safety Report*[7] detailing the extensive history of sexual assaults occurring during Lyft rides:

    a.  In 2017, 167 instances of non-consensual kissing of a non-sexual body part occurred during a Lyft rideshare.
    b.  In 2017, 598 instances of non-consensual touching of a sexual body part occurred during a Lyft rideshare.
    c.  In 2017, 131 instances of non-consensual kissing of a sexual body part occurred during a Lyft rideshare.
    d.  In 2017, 107 instances of attempted non-consensual sexual penetration occurred during a Lyft rideshare.
    e.  In 2017, 93 instances of non-consensual sexual penetration occurred during a Lyft rideshare.
    f.  In 2018, 212 instances of non-consensual kissing of a non-sexual body part occurred during a Lyft rideshare.
    g.  In 2018, 661 instances of non-consensual touching of a sexual body part occurred during a Lyft rideshare.
    h.  In 2018, 172 instances of non-consensual kissing of a sexual body part occurred during a Lyft rideshare.
    i.  In 2018, 99 instances of attempted non-consensual sexual penetration occurred during a Lyft rideshare.
    j.  In 2018, 111 instances of non-consensual sexual penetration occurred during a Lyft rideshare.
    k.  In 2019, 293 instances of non-consensual kissing of a non-sexual body part occurred during a Lyft rideshare.
    l.  In 2019, 1041 instances of non-consensual touching of a sexual body part occurred during a Lyft rideshare.
    m.  In 2019, 203 instances of non-consensual kissing of a sexual body part occurred during a Lyft rideshare.
    n.  In 2019, 114 instances of attempted non-consensual sexual penetration occurred during a Lyft rideshare.
    o.  In 2019, 156 instances of non-consensual sexual penetration occurred during a Lyft rideshare.

55.     These reports exemplify the extensive history of sexual assaults that have been progressively increasing during Lyft rides.

---

[7] *See Community Safety Report: Lyft's commitment to safety for riders, drivers and communities*, at 6-7.

14

Case ID: 230800834

56.     Specifically, according to the report, Lyft counted 4,158 reports of sexual assault between the beginning of 2017 and the end of 2019.

57.     Importantly, this included instances of non-consensual kissing of a non-sexual body part and a sexual body part, non-consensual touching of a sexual body part, attempted non-consensual penetration, and non-consensual penetration.

58.     Presumably, this failed to count other categories of sexual violence, such as masturbation, verbal and/or harassing threats, and unsuccessful attempts at non-consensual kissing and touching, or other violence.

59.     Yet nothing was done for years to prevent future passengers from becoming victims – in fact, the number of sexual assaults has only spiked.

60.     In addition to using exploitative marketing efforts and images to purport to target the safety of women, Defendant Lyft touted safety and security as a priority through the proclamation of John Zimmer, Co-Founder and President of Lyft, proclaimed in a consumer safety report released prior to Plaintiff's attack that: "[s]afety is fundamental to Lyft. That means creating features and policies to give riders and drivers peace of mind, and being clear about what happens on our platforms."[8]

61.     Despite this public-facing claim to prioritize the safety of its customers, Defendant Lyft has routinely ignored instances of sexual assault committed by its drivers, thus perpetuating an environment where such atrocities become more common.

62.     For example, Caroline Miller, a 21-year-old female, who was raped by her Lyft driver during a ride home from her own birthday party reported that Lyft's only response was to

---

[8] *Id.* at 1.

Case ID: 230800834

reimburse her for the money spent on the trip. "I didn't even get an email. It was crazy. They kind of just pushed it under the rug, and were like, 'whatever,'" she reported to the Associated Press.[9]

63.     Another female customer (who wished to remain anonymous) who was raped by her Lyft driver, reported falling asleep in the back of the Lyft car after a night out drinking, and woke up to her Lyft driver sexually molesting her. [10]

64.     She reported "if there was a camera in the car that night, I can almost guarantee that nothing would have happened [...] I think Lyft has done a super, super great job hiding all of this."[11]

65.     In September 2019, almost *two (2) years* before Plaintiff, Jane Doe, A.F., was violently attacked and brutally assaulted by her Lyft driver, CNN, a national news outlet, reported lawsuits against Defendant Lyft by fourteen (14) women who accused Lyft of "mishandling sexual assault and rape reports."[12]

66.     The news report highlighted the lack of video recordings inside vehicles and other missing safety features.[13]

67.     Almost two (2) years later, those features were still missing when Plaintiff, Jane Doe A.F., was horrifically sexually assaulted by Brown, an employee, servant, partner in a joint venture, and/or agent of Defendant Lyft.

---

[9] *See* Cathy Bussewitz, *Lyft's good-guy image tainted by sexual assault lawsuits*, AP NEWS (Jan. 6, 2020), https://apnews.com/article/4634719e61021bf6b9995075c39c36e6.

[10] *Id.*

[11] *Id.*

[12] *See* Sara Ashley O'Brien, *14 women sue Lyft for allegedly mishandling sexual assault and rape reports*, CNN Business (Sept. 4, 2019, 8:40 PM), https://www.cnn.com/2019/09/04/tech/lyft-sexual-assault-lawsuit/index.html.

[13] *See* Sara Ashley O'Brien, *14 women sue Lyft for allegedly mishandling sexual assault and rape reports*, CNN Business (Sept. 4, 2019, 8:40 PM), https://www.cnn.com/2019/09/04/tech/lyft-sexual-assault-lawsuit/index.html.

Case ID: 230800834

68.     Considering the spike of sexual assaults by Lyft drivers reported by customers, Defendant-driver's attack on Plaintiff was wholly foreseeable by Defendant Lyft.

69.     Yet, Defendant Lyft has chosen to ignore the well-known risks of sexual assault to its passengers, notably by failing to implement basic safety and deterrent features such as cameras inside Lyft vehicles—a fundamental safety feature common to nearly all other forms of public and private transportation.

70.     Upon information and belief, Defendant Lyft has applied through the Pennsylvania Public Utility Commission for certification as a "common carrier, by motor vehicle" in this Commonwealth.[14]

71.     As a common carrier, Defendant Lyft owes its passengers, including Plaintiff, the highest duty of care.

72.     Defendant Lyft also exercises significant control over the work performed by its drivers, including Defendant-driver.

73.     Defendant Lyft sets all the fare rates for its drivers.

74.     Drivers of Defendant Lyft do not have input on the fares charged and do not have the ability to negotiate fares with customers.

75.     Defendant Lyft collects a percentage of the fee for every ride.

76.     Defendant Lyft does not charge drivers a fee to become a Lyft driver and Defendant Lyft does not charge drivers to use the Lyft app.

77.     Defendant Lyft has the power to terminate drivers with or without cause.

---

[14] *See Application of LYFT, Inc., a Corporation of the State of Delaware, for the Right to Begin to Transport, by Motor Vehicle, Persons in the Experimental Service of Transportation Network Company for Passenger Trips between Points in Pennsylvania*, PAPUC, https://www.puc.pa.gov/hearing/20140903/application-of-lyft-inc-a-corporation-of-the-state-of-delaware-for-the-right-to-begin-to-transport-by-motor-vehicle-persons-in-the-experimental-service-of-transportation-network-company-for-passenger-trips-between-points-in-pennsylvania (last visited January 31, 2023).

Case ID: 230800834

78.     Defendant Lyft drivers are expected to accept all ride requests while they are logged into the app.

79.     Drivers are connected to their passengers through the mobile application supplied by Defendant Lyft.

80.     Defendant Lyft provides its drivers with and requires them to use and display Lyft branding materials to make their drivers easily identifiable as Lyft drivers.

81.     As such, Defendant Lyft is responsible and vicariously liable for the actions of its drivers, including Defendant-driver.

82.     Defendant-driver held himself out as an employee of Defendant Lyft, including his Lyft profile in the ride-share app, and the "Lyft" identifier on his vehicle.

83.     At all times material hereto, Lyft approved Defendant-driver as Lyft drivers. Lyft exercises or has a contractual right to exercise significant control over Defendant-driver, including, but not limited to, unilaterally setting the rates that they can charge, unilaterally determining the portion of the payment remitted to compensate them for their services, requiring they comply with their policies regarding personal conduct and vehicle maintenance, and prohibiting them from soliciting rides from customers who do not use the Lyft app.

84.     Further, Defendant-driver attacked Plaintiff within the authorized time and space limits of his work for Defendant Lyft: the attack occurred within the Lyft ride-share vehicle, during the trip which Lyft was providing to Plaintiff.

85.     Defendant Lyft is aware of its duty to its passengers, and it has known that its drivers sexually assault female passengers because of the hundreds of complaints of sexual assaults reported each year; yet Defendant Lyft does not enact safety procedures to protects its passengers from these assaults.

18

Case ID: 230800834

86. Defendant Lyft failed to utilize its own technology – such as in-car cameras, live video on the same smart phone used to run the application, GPS tracking (to account for the long stop), real-time photos, live-stream audio, etc.—to ensure that their passengers remain safe.

87. Passengers are not provided with any information regarding their Lyft driver, other than a photograph, and other basic information about the car.

88. Passengers are not informed about prior complaints concerning Lyft drivers.

89. Within the app, Defendant Lyft does not inform passengers whether their comments regarding drivers are shared with those drivers, resulting in a ride-share culture where passengers are fearful that giving honest negative feedback could negatively impact their passenger star rating – or result in retaliation from the driver.

90. As a policy of overseeing the reports internally, Defendant Lyft refuses to notify local authorities.[15]

91. Defendant Lyft gratuitously undertook a duty to keep safe customers using its ride-share services, particularly young, vulnerable customers traveling alone late at night and looking for a safe ride home, including Plaintiff, Jane Doe A.F.

92. The conduct encountered by and perpetrated upon Plaintiff as described in this Complaint was wholly foreseeable.

93. Yet, Defendant-driver was afforded unfettered access to Plaintiff because of Defendant Lyft's carelessness, negligence, gross negligence, and recklessness.

94. Defendant Lyft's failure to properly monitor, supervise, manage, and train Defendant-driver led to the sexual assault and injuries sustained by Plaintiff.

---

[15] *See id.* at 3.

Case ID: 230800834

95.     Defendant Lyft knew or should have known about the risk of sexual abuse to its customers, including Plaintiff.

96.     But for the acts and omissions of Defendant Lyft, and its agents, Plaintiff would not have been sexually assaulted by Defendant-driver.

97.     As a result of Defendants' negligence, gross negligence, recklessness and wanton and outrageous conduct, acts and omissions, Plaintiff, Jane Doe, A.F., has suffered permanent damages including, but not limited to:

> Indecent Assault, pursuant to 18 Pa.C.S.A. § 3126;
> Aggravated Indecent Assault, pursuant to 18 Pa.C.S.A. § 3125;
> Sexual Assault, pursuant to 18 Pa.C.S.A. § 3124.1;
> Involuntary Deviate Sexual Intercourse, pursuant to 18 Pa.C.S.A. § 3123;
> Simple Assault, pursuant to 18 Pa.C.S.A. § 2701;
> Unconsented forceable vaginal penetration;
> Unconsented sexual contact and assault;
> Multiple bruises and contusions;
> Internal and external injuries;
> Permanent emotional trauma/distress;
> Past and future mental anguish;
> Past and future humiliation;
> Past and future embarrassment;
> Past and future loss of life's pleasures;
> Past and future pain and suffering;
> Past and future emotional distress;
> Sexual dysfunction;
> Insomnia;
> Loss of earning capacity; and
> Past and future expenses for medical and psychological treatment, therapy, and counseling.

98.     Assaults by Lyft drivers are particularly terrifying and result in long-lasting emotional trauma because Lyft drivers have the home address of their victims.

99.     Indeed, Plaintiff, Jane Doe A.F., suffers from daily bouts of anxiety and fear that her assailant may return to her home and repeat the attack.

100.    The sexual assaults of Plaintiff, Jane Doe A.F., were caused solely by the negligence and recklessness of Defendant Lyft, individually and by and through its employees

Case ID: 230800834

and/or agents, including Defendant-driver, and in no manner was due to any act of failure to act on the part of Plaintiff, Jane Doe A.F.

## COUNT I

### NEGLIGENCE AND GROSS NEGLIGENCE
### Plaintiff v. Defendants

101.    All averments herein are incorporated by reference as though fully set forth.

102.    Defendants, at all times pertinent hereto, had a duty to exercise reasonable care so to control the conduct of third persons, such as Defendant-driver, as to prevent him from intentionally harming Plaintiff, Jane Doe A.F., or so conducting itself as to create an unreasonable risk of harm to Plaintiff, Jane Doe A.F.

103.    At all times relevant hereto, Defendants knew or should have known that it had the ability to control the conduct of Defendant-driver.

104.    At all times pertinent hereto, Defendants had a duty to take reasonable action to protect Plaintiff, Jane Doe A.F., against unreasonable risk of physical harm such as that perpetrated by Defendant-driver.

105.    The negligence, gross negligence, carelessness, and recklessness of Defendants included, but was not limited to:

    (a)    failing to monitor Defendant-driver's interactions with customers and specifically with Plaintiff, Jane Doe A.F.;

    (b)    failing to adequately supervise Defendant-driver;

    (c)    failing to take proper security measures;

    (d)    failing to install/require video recording devices in all Lyft vehicles;

    (e)    failing to install/require live video streaming device in all Lyft vehicles;

    (f)    failing to properly track drivers by GPS or other means, and/or react properly;

    (g)    failing to require all prospective drivers to utilize Live Scan, a fingerprint-based background check, which is administered through the Department of Justice and the FBI databases;

    (h)    failing to require all drivers to resubmit to Live Scan screening every six (6) months;

Case ID: 230800834

(i)      failing to require all prospective drivers to undergo in-person interviews;

(j)      failing to require and perform reference checks on all prospective drivers and require prospective drivers to provide character references;

(k)      failure to provide in-app panic buttons that would send an alert to Lyft's Critical Response Team, local police, and other relevant agencies so a passenger has a way to quickly contact authorities in the event of an unsafe situation or the threat of an assault;

(l)      failure to install tamper-proof dash cameras in all Lyft vehicles that alert the Critical Response Team if the camera is disabled or in some way malfunctions;

(m)      failure to employ a means for female passengers to connect with female drivers if they wish;

(n)      failure to deploy a service to check on drivers and passengers if the Lyft ride stops unexpectedly somewhere, veers far off course, or takes much longer than expected to complete the ride;

(o)      failure to report all complaints of physical and/or sexual violence, assault, and harassment by Lyft drivers to law enforcements;

(p)      failure to require all drivers to complete sexual harassment and sexual assault prevention training prior to being able to drive for Lyft;

(q)      failure to have policies in place to immediately deactivate any driver if Lyft receives a complaint or allegation of sexual assault by that driver;

(r)      failing to require all drivers to immediately report to Lyft any charge involving kidnapping, violence, physical force, kidnapping and/or any charge involving physical and/or sexual assault,

(s)      failing to adopt a zero-tolerance policy for improper conduct;

(t)      failing to maintain a surveillance camera and rules requiring its continuing operation during all rides;

(u)      failing to inform drivers that if they turn off the surveillance system during a Lyft ride, they will be terminated from the Lyft platform;

(v)      failing to inform drivers that they may not leave the car during the pendency of an active trip;

(w)      failing to inform the drivers that any reports of criminal acts committed by Lyft drivers during, or as a result of driving with Lyft, will be fully investigated by Lyft and reported to law enforcement;

(x)      failing to provide for the safety and protection of Plaintiff, Jane Doe A.F.;

(y)      failing to adequately train employees to not engage in sexual assault and abuse;

(z)      failing to take reasonable safety measures to ensure the safety and well-being of customers such as Plaintiff, Jane Doe A.F.;

(aa)      failing to take reasonable measures to protect customers such as Plaintiff, Jane Doe A.F., against violent crimes, sexual assault, and abuse and/or harm from its employees;

(bb)      failing to implement policies to prevent the sexual abuse and sexual assault of customers;

(cc)      failing to enforce policies which were enacted to prevent sexual abuse and sexual assault of customers;

(dd)      failing to adequately control interaction between its drivers and customers;

Case ID: 230800834

(ee)   failing to adequately have policies in place to perform appropriate background and criminal activity checks on its drivers;

(ff)   failing to perform an adequate background and criminal activity check on Defendant-driver;

(gg)   failing to perform adequate screening on Defendant-driver;

(hh)   failing to adequately investigate assault allegations against Lyft drivers;

(ii)   failing to report assault allegations against Lyft drivers to the appropriate authorities;

(jj)   failing to cooperate with law enforcement investigations regarding reports of physical and sexual assault;

(kk)   failing to timely intervene to stop the assault against Plaintiff, Jane Doe A.F.;

(ll)   failing to timely respond and assist Plaintiff, Jane Doe, A.F.;

(mm)   committing negligence *per se*:

    i.   Indecent Assault, pursuant to 18 Pa.C.S.A. §3126;

    ii.   Aggravated Indecent Assault, pursuant to 18 Pa.C.S.A. §3125;

    iii.   Sexual Assault, pursuant to 18 Pa.C.S.A. §3124.1;

    iv.   Involuntary Deviate Sexual Intercourse, pursuant to 18 Pa.C.S.A. §3123;

    v.   Simple Assault, pursuant to 18 Pa.C.S.A. §2701;

(nn)   other acts or omissions constituting negligence, gross negligence, recklessness, and carelessness as may be ascertained through discovery and may be demonstrated by the evidence at the trial of this case

106.   As a direct and proximate result of the negligence, gross negligence, carelessness and recklessness of Defendants, acting individually and by and through its agents, servants and/or employees, including Defendant-driver, Plaintiff, Jane Doe A.F., has suffered pain and suffering, humiliation, embarrassment, mental anguish and will continue to do so for an infinite amount of time into the future.

107.   As a direct and proximate result of the negligence, gross negligence, carelessness and recklessness of Defendants, acting individually and by and through its agents, servants and/or employees, including Defendant-driver, Plaintiff, Jane Doe A.F., has been deprived of the past and future ordinary pleasures of life and will continue to suffer for an infinite amount of time into the future, all to her great detriment and loss.

**WHEREFORE**, Plaintiff, Jane Doe A.F., demands judgment in her favor for compensatory and punitive damages against all Defendants herein, jointly and severally, in a sum

Case ID: 230800834

in excess of Fifty Thousand ($50,000.00) Dollars and local arbitration limits, plus allowable taxable costs interest, delay damages, punitive damages and other such relief as this Honorable Court deems appropriate.

## COUNT II

### NEGLIGENCE – VICARIOUS LIABILITY
### Plaintiff v. Defendants

108.    All averments herein are incorporated by reference as though fully set forth.

109.    Plaintiff, Jane Doe A.F., was sexually assaulted by Defendant-driver, who was at all times relevant hereto, an employee and/or agent and/or ostensible agent of Defendant Lyft.

110.    At all times pertinent hereto, Defendant-driver was acting as the sole or joint agent, servant and/or employee of Defendant Lyft.

111.    At times material hereto, Defendant-driver was acting in the course and scope of his employment with Defendant Lyft.

112.    Defendants had a duty and obligation to a paying customer, to exercise reasonable care in the appointment and hiring of its employees.

113.    Defendants are vicariously liable for the actions of its employees, agents, ostensible agents and/or servants, including Defendant-driver, the driver described herein, in that the actions that were perpetuated upon Plaintiff, Jane Doe A.F., were negligent, grossly negligent, reckless, and careless in the following particular respects:

    (a)    attacking Plaintiff as set forth above and/or committing assault and battery, pursuant to 18 Pa.C.S.A. §2701(a)(1);

    (b)    committing harassment, pursuant to 18 Pa.C.S.A. §2709(a);

    (c)    committing indecent assault, pursuant to 18 Pa.C.S.A. §3126(a);

    (d)    committing sexual abuse;

    (e)    failing to take reasonable safety measures to ensure the safety and well-being of customers such as Plaintiff, Jane Doe A.F.;

Case ID: 230800834

      (f)     failing to take reasonable measures to protect customers such as Plaintiff, Jane Doe A.F., against violent crimes, sexual assault, and abuse and/or harm from its employees;

      (g)    negligent hiring and/or selection and/or retention of agents, employees, managers and/or contractors; and

      (h)    other acts or omissions constituting negligence, gross negligence, recklessness, and carelessness as may be ascertained through discovery and may be demonstrated by the evidence at the trial of this case.

114.  As a direct and proximate result of the negligence, gross negligence, carelessness, and reckless conduct of Defendants, acting individually and by and through its agents, servants and/or employees, including Defendant-driver, Plaintiff, Jane Doe A.F., has suffered pain and suffering, humiliation, embarrassment, mental anguish, and will continue to do so for an infinite amount of time into the future.

115.  As a direct and proximate result of the negligence, gross negligence, carelessness, and reckless conduct of Defendants, acting individually and by and through its agents, servants and/or employees, including Defendant-driver, Plaintiff, Jane Doe A.F., has been deprived of the past and future ordinary pleasures of life and will continue to suffer for an infinite amount of time into the future, all to her great detriment and loss.

**WHEREFORE**, Plaintiff, Jane Doe A.F., demands judgment in her favor for compensatory and punitive damages against all Defendants herein, jointly and severally, in a sum in excess of Fifty Thousand ($50,000.00) Dollars and local arbitration limits, plus allowable taxable costs interest, delay damages, punitive damages and other such relief as this Honorable Court deems appropriate.

Case ID: 230800834

### COUNT III

## NEGLIGENCE AND GROSS NEGLIGENCE
## – HIRING, TRAINING AND SUPERVISION
### Plaintiff v. Defendant, Lyft

116.    The averments of the previous paragraphs are incorporated by reference as though fully set forth herein.

117.    Defendant Lyft had a duty and obligation to Plaintiff, Jane Doe A.F., as a customer, to exercise reasonable care in the appointment and re-appointment of members of employees, servants and/or agents.

118.    Defendant Lyft also had a duty and obligation to supervise and monitor the actions and behaviors of its drivers.

119.    It is believed and, therefore, averred that Defendant Lyft was negligent, grossly negligent and reckless in failing to determine the qualifications and fitness of Defendant-driver properly and truly prior to hiring him and permitting him to remain as a member of its staff of drivers.

120.    It is believed and, therefore, averred that Defendant Lyft was negligent, grossly negligent, and reckless in failing to properly train its driver, Defendant-driver, after hiring him as a Lyft driver.

121.    It is believed and, therefore, averred that Defendant Lyft was negligent, grossly negligent, and reckless in failing to supervise and monitor the actions of its driver, Defendant-driver.

122.    Defendant Lyft was negligent, grossly negligent, careless, and reckless in the following particular respects:

> (a)    persistently and repeatedly failing or refusing to supervise staff and/or other employees, and/or having a lack of oversight;

Case ID: 230800834

(b)    failing to recognize that its employee was sexually abusing and/or exploiting customer, Plaintiff, Jane Doe A.F.;

(c)    negligently, grossly negligently, carelessly and/or recklessly failing to observe and supervise Defendant-driver's inappropriate sexual interaction with Plaintiff, Jane Doe A.F.;

(d)    negligently, grossly negligently, carelessly and/or recklessly failing to implement and enforce policies and procedures that would have prevented the sexual misconduct, sexual abuse and sexual assault of Plaintiff, Jane Doe A.F., by Defendant-driver to occur;

(e)    failure to use due care under the circumstances;

(f)    negligent supervision as may be proven from facts now exclusively in the possession of Defendant Lyft;

(g)    failing to conduct a thorough background check of Defendant-driver;

(h)    failing to contact appropriate references for Defendant-driver;

(i)    failing to use due care in the selection of Defendant-driver as a driver for Defendant Lyft;

(j)    failing to use due care in the retention of Defendant-driver as a driver who was responsible and had authoritative control over Defendant Lyft's passengers;

(k)    failing to monitor Defendant-driver's interactions with customers and specifically with Plaintiff, Jane Doe A.F.;

(l)    failing to adequately supervise Defendant-driver;

(m)    failing to take proper security measures;

(n)    failing to install/require video recording devices in all Lyft vehicles;

(o)    failing to install/require live video streaming device in all Lyft vehicles;

(p)    failing to disable child lock and window lock features on driver vehicles;

(q)    failing to properly track drivers by GPS or other means;

(r)    failing to require all prospective drivers to utilize Live Scan, a fingerprint-based background check which is administered through the Department of Justice and the FBI databases;

(s)    failing to require all drivers to resubmit to Live Scan screening every six (6) months;

(t)    failing to require all prospective drivers to undergo in-person interviews;

(u)    failing to require and perform reference checks on all prospective drivers and require prospective drivers to provide character references;

(v)    failure to provide in-app panic buttons that would send an alert to Lyft's Critical Response Team, local police, and other relevant agencies so a passenger has a way to quickly contact authorities in the event of an unsafe situation or the threat of an assault;

(w)    failure to install tamper-proof dash cameras in all Lyft vehicles that alert the Critical Response Team if the camera is disabled or in some way malfunctions;

(x)    failure to employ a means for female passengers to connect with female drivers if they wish;

(y)    failure to deploy a service to check on drivers and passengers if the Lyft ride stops unexpectedly somewhere, veers far off course, or takes much longer than expected to complete the ride;

Case ID: 230800834

(z)  failure to report all complaints of physical and/or sexual violence, assault, and harassment by Lyft drivers to law enforcements;

(aa)  failure to require all drivers to complete sexual harassment and sexual assault prevention training prior to being able to drive for Lyft;

(bb)  failure to have policies in place to immediately deactivate any driver if Lyft receives a complaint or allegation of sexual assault by that driver;

(cc)  failing to require all drivers to immediately report to Lyft any charge involving kidnapping, violence, physical force, kidnapping and/or any charge involving physical and/or sexual assault,

(dd)  failing to adopt a zero-tolerance policy for improper conduct;

(ee)  failing to maintain a surveillance camera and rules requiring its continuing operation during all rides;

(ff)  failing to inform drivers that if they turn off the surveillance system during a Lyft ride, they will be terminated from the Lyft platform;

(gg)  failing to inform drivers that they may not leave the car during an active ride, and accompany a passenger to their home or to any other location outside the vehicle;

(hh)  failing to inform the drivers that any reports of criminal acts committed by Lyft drivers during or as a result of driving with Lyft will be fully investigated by Lyft and reported to law enforcement;

(ii)  failing to adequately train employees to not engage in sexual assault and abuse;

(jj)  failing to take reasonable safety measures to ensure the safety and well-being of customers such as Plaintiff, Jane Doe A.F.;

(kk)  failing to take reasonable measures to protect customers such as Plaintiff, Jane Doe A.F., against violent crimes, sexual assault, and abuse and/or harm from its employees;

(ll)  failing to implement policies to prevent the sexual abuse and sexual assault of customers;

(mm)  failing to enforce policies which were enacted to prevent sexual abuse and sexual assault of customers;

(nn)  failing to adequately control interaction between its drivers and customers;

(oo)  failing to adequately have policies in place to perform appropriate background and criminal activity checks on its drivers;

(pp)  failing to perform an adequate background and criminal activity check on Defendant-driver;

(qq)  failing to perform adequate screening on Defendant-driver;

(rr)  failing to report assault allegations against Lyft drivers to appropriate authorities;

(ss)  failing to run thorough background checks on drivers; and

(tt)  failing to cooperate with law enforcement investigations regarding reports of physical and sexual assault;

123.   The harms, injuries, losses, and damages suffered by Plaintiff, Jane Doe A.F., and

that she will continue to suffer from, were directly and proximately caused by the negligence, gross

Case ID: 230800834

negligence recklessness and careless conduct of Defendant Lyft, individually and by and through its agents, servants, and/or employees, including Defendant-driver, consisted of all of the conduct set forth herein.

124.    As a direct and proximate result of negligence, gross negligence, recklessness, and careless behavior of Defendant Lyft, individually, and by and through its agents, servants and/or employees' negligence, gross negligence, recklessness and careless conduct as set forth in this Complaint, Plaintiff, Jane Doe A.F., suffered the injuries described in the Facts section above, and incorporated herein as if fully set forth, Plaintiff, Jane Doe A.F., demands judgment against Defendant Lyft, for compensatory and punitive damages, exclusive of pre-judgment interest, costs and post-judgment interest in excess of the local arbitration limits.

**WHEREFORE**, Plaintiff, Jane Doe A.F., demands judgment in her favor for compensatory and punitive damages against all Defendants herein, jointly and severally, in a sum in excess of Fifty Thousand ($50,000.00) Dollars and local arbitration limits, plus allowable taxable costs interest, delay damages, punitive damages and other such relief as this Honorable Court deems appropriate.

## COUNT IV

### NEGLIGENT PERFORMANCE OF UNDERTAKING TO RENDER SERVICES
### Plaintiff v. Defendants

125.    The averments of the previous paragraphs are incorporated by reference as though fully set forth herein.

126.    Defendants, undertook, for consideration, the provision of Commercial transportation services to Plaintiff, Jane Doe A.F., pursuant to Restatement (Second) of Torts §323.

127.    Defendants should have recognized that Plaintiff, Jane Doe A.F., needed to be protected from Defendant-driver.

Case ID: 230800834

128.    Plaintiff, Jane Doe A.F., suffered harm as a result of Defendant Lyft's failure to exercise reasonable care to perform its undertaking.

129.    Defendants' failure to exercise such care increased the risk of harm to the Plaintiff, Jane Doe A.F., and/or Plaintiff, Jane Doe A.F., was harmed because of her reliance upon Defendant Lyft's undertaking to provide services to her.

130.    As a direct and proximate result of the negligence, gross negligence, carelessness, and recklessness of Defendants, acting individually and by and through its agents, servants and/or employees, including Defendant-driver, Plaintiff, Jane Doe A.F., has suffered pain and suffering, humiliation, embarrassment, mental anguish, and will continue to do so for an infinite amount of time into the future.

131.    As a direct and proximate result of the negligence, gross negligence, carelessness and recklessness of Defendants, acting individually and by and through its agents, servants and/or employees, including Defendant-driver, Plaintiff, Jane Doe A.F., has been deprived of the past and future ordinary pleasures of life and will continue to suffer for an infinite amount of time into the future, all to her great detriment and loss.

**WHEREFORE**, Plaintiff, Jane Doe A.F., demands judgment in her favor for compensatory and punitive damages against all Defendants herein, jointly and severally, in a sum in excess of Fifty Thousand ($50,000.00) Dollars and local arbitration limits, plus allowable taxable costs interest, delay damages, punitive damages and other such relief as this Honorable Court deems appropriate.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### Plaintiff v. All Defendants

Case ID: 230800834

132.    The averments of the previous paragraphs are incorporated by reference as though fully set forth herein.

133.    The conduct of Defendant-driver, acting as an agent of Defendant Lyft, in the course and scope of his employment, was extreme and outrageous, so as to cause severe emotional distress intentionally or recklessly, and was the actual, proximate, and factual cause of severe emotional distress to Plaintiff, Jane Doe A.F.

134.    The conduct of Defendant-driver was executed intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress.

135.    The conduct of Defendant-driver was executed in such a way as to inflict emotional distress and to harm Plaintiff, Jane Doe A.F., emotionally, mentally, physically, and psychologically.

136.    Defendant-driver, acting as an agent of Defendant Lyft, and by and through the scope of his employment with Defendant Lyft, engaged in willful, wanton, reckless and/or intentional acts as described above which caused the injuries as described above, and incorporated herein as if fully set forth, to Plaintiff, Jane Doe A.F.

137.    The previously mentioned injuries were due to the willful, wanton, reckless, careless, negligent and/or intentional acts of Defendant-driver, and were in no way caused by any act or failure to act on the part of Plaintiff, Jane Doe A.F.

138.    As a further result of the willful, wanton, reckless, careless negligent and/or intentional acts of Defendant-driver, Plaintiff, Jane Doe A.F., was caused to endure great pain and suffering, humiliation, embarrassment, shame, and self-blame, and will continue to suffer into the future.

**WHEREFORE**, Plaintiff, Jane Doe A.F., demands judgment in her favor for

31

Case ID: 230800834

compensatory and punitive damages against all Defendants herein, jointly, and severally, in a sum in excess of Fifty Thousand ($50,000.00) Dollars and local arbitration limits, plus allowable taxable costs interest, delay damages, punitive damages and other such relief as this Honorable Court deems appropriate.

## COUNT VI

## ASSAULT

### Plaintiff v. Defendant, Brown

139.    The averments of the previous paragraphs are incorporated by reference as though fully set forth herein.

140.    Defendant-driver intended to cause a harmful or offensive contact with the body of Plaintiff, Jane Doe A.F., and/or Defendant-driver intended to put Plaintiff, Jane Doe A.F., in reasonable and immediate fear of a harmful or offensive contact with her body.

141.    Defendant-driver intended to put Plaintiff, Jane Doe A.F., in reasonable and immediate fear of a harmful or offensive contact with her body; and Plaintiff, Jane Doe A.F., as a result of the acts of Defendant-driver was put in reasonable and immediate fear of such contact.

142.    The actions of Defendant-driver, during the course and scope of his employment, directly and/or indirectly resulted in harmful or offensive contact with the body of Plaintiff, Jane Doe A.F., including, but not limited to:

> Indecent Assault, pursuant to 18 Pa.C.S.A. §3126;
> Aggravated Indecent Assault, pursuant to 18 Pa.C.S.A. §3125;
> Sexual Assault, pursuant to 18 Pa.C.S.A. §3124.1;
> Involuntary Deviate Sexual Intercourse, pursuant to 18 Pa.C.S.A. §3123;
> Simple Assault, pursuant to 18 Pa.C.S.A. §2701;

143.    The contact with the body of Plaintiff, Jane Doe A.F., was so offensive such that it would offend a reasonable person's personal sense of dignity.

32

144.     The unlawful actions of Defendant-driver took place within the authorized time and space limits at the regular workplace on the premises owned, operated and/or maintained by Defendant Lyft, while he was an employee of Defendant Lyft, while actively working on his shift as a driver and within the scope of his employment.

145.     Defendant-driver was doing work assigned by, and under the direction or control of, his employer, Defendant Lyft, when he sexually assaulted Plaintiff, Jane Doe A.F.

146.     Defendant Lyft directed and controlled the contact of its employees, including Defendant-driver, with Defendant's customers, including Plaintiff, Jane Doe A.F., through its policies and procedures.

147.     When Defendant-driver explicitly decided to give additional attention to Plaintiff, Jane Doe A.F., it was actuated, at least in part, by a purpose to serve his employer, Defendant Lyft.

148.     Defendant-driver used his status of authority and power, granted to him by way of his employment with Defendant Lyft, which allowed him to force himself upon Plaintiff, Jane Doe A.F.

149.     As a direct and proximate result of negligence, gross negligence, willfulness, reckless and outrageous behavior of Defendant-driver, Plaintiff, Jane Doe A.F., suffered the injuries described in the Facts section above, and incorporated herein as if fully set forth.

150.     As a direct and proximate result of negligence, gross negligence, willful, wanton, and outrageous conduct of Defendant-driver, Plaintiff, Jane Doe A.F., has suffered pain and suffering, humiliation, embarrassment, mental anguish and will continue to do so for an infinite amount of time into the future.

151.     As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, wanton and/or willful conduct of Defendant-driver, Plaintiff, Jane Doe

Case ID: 230800834

A.F., has been deprived of the past and future ordinary pleasures of life and will continue to suffer for an infinite amount of time into the future, all to her great detriment and loss.

**WHEREFORE**, Plaintiff, Jane Doe A.F., demands judgment in her favor for compensatory and punitive damages against all Defendants herein, jointly, and severally, in a sum in excess of Fifty Thousand ($50,000.00) Dollars and local arbitration limits, plus allowable taxable costs interest, delay damages, punitive damages and other such relief as this Honorable Court deems appropriate.

## COUNT VII

## BATTERY

### Plaintiff v. Defendant, Brown

152.    The averments of the previous paragraphs above are incorporated herein by reference as though fully set forth.

153.    Defendant-driver intended to cause a harmful or offensive contact with the body of Plaintiff, Jane Doe A.F., and/or intended to put Plaintiff, Jane Doe A.F., in reasonable and immediate fear of a harmful or offensive contact with her body; and the actions of Defendant-driver directly or indirectly resulted in a harmful or offensive contact with the body of Plaintiff, Jane Doe A.F.

154.    The actions of Defendant-driver during the course and scope of his employment, directly and/or indirectly resulted in harmful or offensive contact with the body of Plaintiff, Jane Doe A.F., including but not limited to:

> Indecent Assault, pursuant to 18 Pa.C.S.A. §3126;
> Aggravated Indecent Assault, pursuant to 18 Pa.C.S.A. §3125;
> Sexual Assault, pursuant to 18 Pa.C.S.A. §3124.1;
> Involuntary Deviate Sexual Intercourse, pursuant to 18 Pa.C.S.A. §3123;
> Simple Assault, pursuant to 18 Pa.C.S.A. §2701;

Case ID: 230800834

155.     The contact with the body of Plaintiff, Jane Doe A.F., was so offensive such that it would offend a reasonable person's personal sense of dignity.

156.     The unlawful actions of Defendant-driver took place within the authorized time and space limits at the regular workplace in his vehicle driven for purposes of serving his employer/principal Defendant Lyft, while he was an agent of Defendant Lyft, actively working on his shift within the course and scope of his employment/contract/agency relationship.

157.     Defendant-driver was doing work assigned by, and under the direction or control of, his employer, Defendant Lyft, when he sexually assaulted Plaintiff, Jane Doe A.F.

158.     Defendant-driver used his status of authority and power, granted to him by way of his employment with Defendant Lyft, to force Plaintiff, Jane Doe A.F., into non-consensual sexual acts.

159.     As a direct and proximate result of the negligence, carelessness, recklessness, willful and tortious conduct of Defendant-driver, Plaintiff, Jane Doe A.F., was severely and permanently injured.

160.     As a direct and proximate result of negligence, gross negligence, willfulness, reckless and outrageous behavior of Defendant-driver, Plaintiff, Jane Doe A.F., suffered the injuries described in the Facts section above, and incorporated herein as if fully set forth.

161.     As a direct and proximate result of negligence, gross negligence, willful, wanton, and outrageous conduct of Defendant-driver, Plaintiff, Jane Doe A.F., has suffered pain and suffering, humiliation, embarrassment, mental anguish, and will continue to do so for an infinite amount of time into the future.

162.     As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, wanton and/or willful conduct of Defendant-driver, Plaintiff, Jane Doe A.F., has been

Case ID: 230800834

deprived of the past and future ordinary pleasures of life and will continue to suffer for an infinite amount of time into the future, all to her great detriment and loss.

**WHEREFORE**, Plaintiff, Jane Doe A.F., demands judgment in her favor for compensatory and punitive damages against all Defendants herein, jointly, and severally, in a sum in excess of Fifty Thousand ($50,000.00) Dollars and local arbitration limits, plus allowable taxable costs interest, delay damages, punitive damages and other such relief as this Honorable Court deems appropriate.

## COUNT VII

## NEGLIGENT MISREPRESENTATION

### Plaintiff v. Defendants

163.    All paragraphs are incorporated herein by reference.

164.    Defendant Lyft's staff and/or agents made numerous misrepresentations of material fact to Plaintiff, including, but not limited to, promises to keep Plaintiff safe from harm.

165.    The Defendants' misrepresentations were material to the transactions between the Plaintiff and Defendants relative to, among other things, Plaintiff's safe transport.

166.    The Defendants should have known that the negligent misrepresentations were false when made to the Plaintiff (and other passengers), especially given the numerous complaints they had received previously and continue to receive to this day.

167.    The Defendants' negligent misrepresentations were made with the intent of gaining the competitive advantage and inducing the Plaintiffs to rely upon said misrepresentations.

168.    Plaintiff justifiably and reasonably relied on the Defendants' misrepresentations to her great detriment, as she suffered great emotional distress and injury on account being sexually violated while expecting to be transported safely home.

Case ID: 230800834

169.     The actions of Defendant Lyft's staff and/or agents during the course and scope of

their employment directly and/or indirectly negligently failed to act in accordance with the

misrepresentations Plaintiff justifiably and reasonably relied upon, failed to warn, failed to

rescue, and engaged in misconduct that resulted in harmful or offensive contact with Plaitniff's

bodies including but not limited to:

     a.     Indecent Assault, pursuant to Title 18 § 3126;
     b.     Aggravated Indecent Assault, pursuant to 18 Pa.C.S.A. §3125;
     c.     Sexual Assault, pursuant to 18 Pa.C.S.A. §3124.1;
     d.     Involuntary Deviate Sexual Intercourse, pursuant to 18 Pa.C.S.A. §3123;
     e.     Simple Assault, pursuant to 18 Pa.C.S.A. §2701;
     f.     Aggravated Indecent Assault, pursuant to Title 18 § 3125;
     g.     Indecent Exposure, pursuant to Title 18 § 3127;
     h.     Simple Assault, pursuant to Title 18 § 2701;
     i.     Assault;
     j.     Battery;
     k.     Other criminal and other violations;
     l.     Negligence;
     m.     Recklessness;
     n.     Gross Negligence;
     o.     Negligent Hiring and Retention;
     p.     Negligent Infliction of Emotional Distress; and/or
     q.     Intentional Infliction of Emotional Distress;

170.     The contact Brown had with Plaintiff's body was offensive such that it would

offend a reasonable person's personal sense of dignity.

171.     The unlawful contact that Plaintiff endured and that took place while Defendant

Lyft was supposed to be transporting Plaintiff safely, took place on a Lyft ride, which was

owned, operated, and/or maintained by Defendant Magic Memories, and all of the staff members

present as this misconduct occurred, were employees of Defendant Lyft, actively working, and

within the scope of his employment and/or agency, as defined more fully herein.

172.     Defendant Lyft's agents and staff promised and was required to keep Plaintiff

safe, and they used their status of authority and power, granted to them by way of their

employment with Defendant Lyft, to permit harmful contact to befall on its passengers, like

Case ID: 230800834

Plaintiff.

173.    As a direct result of the Defendants' misrepresentation, Plaintiff's detrimental reliance on the Defendants' misrepresentation, negligence, carelessness, recklessness, wanton, willful, and tortious conduct that occurred because of the negligence of Defendants, Plaintiff was severely and permanently injured.

174.    Prior to, or during the sexual abuse averred herein, Defendant Lyft knew or should have known, of the sexual tendencies of the perpetrating driver, Brown yet they failed to supervise or implement safeguards to prevent further unwanted contact as perpetrated against Plaintiff.

175.    Despite their representations to the contrary, Defendant Lyft failed to take reasonable steps and failed to implement reasonable safeguards to prevent, eliminate, and/or avoid acts of unlawful sexual conduct its drivers on its passengers, by failing to properly hire and/or screen competent and fit staff, failing to train and/or supervise staff.

176.    Furthermore, despite representations to the contrary, at all times relevant hereto, Defendants did not have and/or failed to properly use a system or procedure in place to appropriately communication, appropriately supervise and/or monitor the drivers and/or passengers, to ensure their safety; despite being required to, and despite promising passengers that they would be safe.

177.    As a result of the Defendant's misrepresentation, Plaintiff's detrimental reliance on the Defendant's misrepresentation, and Defendants' acts, omissions, and utter misconduct, as outlined herein, Plaintiff has suffered and continues to suffer physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress; depression, nightmares, nervousness, stress, and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, fear, and other

Case ID: 230800834

emotional distress; were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

178.    The harms, injuries, losses, and damages suffered by Plaintiff, and that Plaintiff continue to suffer from, were directly and proximately caused by negligence, willfulness, wanton, recklessness, and outrageous conduct of Defendants, individually and by and through their agents, servants, and/or employees, which consisted of, among other things, all conduct described more fully herein.

179.    As a direct and proximate result of negligence, gross negligence, wanton, willfulness, reckless, and outrageous behavior and conduct of Defendant Lyft, individually acting by and through its agents, servants, and/or employees, Plaintiffs have incurred and will continue to incur medical and psychological treatment and services.

180.    Because of the grossly negligent, wanton, and outrageous conduct as set forth in this complaint Plaintiffs are entitled to punitive damages.

WHEREFORE, Plaintiffs demand judgment in Plaintiffs' favor for compensatory and punitive damages against all Defendants herein jointly and severally, in a sum in excess of $50,000 and local arbitration limits, plus allowable taxable costs, interest, delay damages, and such other relief as this Honorable Court deems appropriate.

SALTZ, MONGELUZZI & BENDESKY, P.C.

BY:    _____/s/ *Kristen Feden*____

Case ID: 230800834

ROBERT J. MONGELUZZI, ESQUIRE
ANDREW DUFFY, ESQUIRE
KRISTEN FEDEN, ESQUIRE
MARNI BERGER, ESQUIRE
*Attorneys for Plaintiff*

Dated:  October 11, 2023

Case ID: 230800834