**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JANE DOE A.F., a pseudonym** | |
| **Plaintiff,** | |
| **v.** | Civil Action No: 2:23-cv-03990-KSM |
| **LYFT, INC. and NTIAMOAH BROWN,** | **ORAL ARGUMENT REQUESTED** |
| **Defendants.** | |

**DEFENDANT LYFT, INC.'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULE 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Lyft, Inc. ("Lyft") hereby moves to dismiss all of the claims asserted against Lyft in the Amended Complaint of Plaintiff Jane Doe A.F. – specifically, Count I (Negligence and Gross Negligence), Count II (Negligence – Vicarious Liability), Count III (Negligence and Gross Negligence – Hiring, Training and Supervision), Count IV (Negligent Performance of Undertaking to Render Services), Count VII (Negligent Misrepresentation), and the demand for punitive damages – for failure to state a claim upon which relief can be granted. For the reasons more fully set forth in Lyft's accompanying brief in support, filed herewith and incorporated herein, Lyft respectfully requests that the Court enter an Order dismissing Counts I, II, III, IV and VII and the punitive damages demand of the Amended Complaint.

Pursuant to Section II.B.1. of this Court's Policies and Procedures, Lyft's undersigned counsel certifies that counsel for Lyft and Plaintiff met and conferred via Zoom videoconference on November 7 and November 22, 2023, regarding the pleading deficiencies raised in Lyft's Motion but were unable to reach a resolution that eliminates the need for Lyft's Motion.

Dated:  December 1, 2023

**HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER**

By: _/s/ Matthew N. Klebanoff_
Ronald P. Schiller
Matthew N. Klebanoff
Cary L. Rice
Marianne E. Bradley
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
rschiller@hangley.com
mklebanoff@hangley.com
crice@hangley.com
mbradley@hangley.com

_Attorneys for Defendant Lyft, Inc._

<u>**CERTIFICATION OF PRE-MOTION CONFERENCE**</u>

Pursuant to Section II.B.1. of this Court's Policies and Procedures, Lyft's undersigned counsel certifies that counsel for Lyft and Plaintiff met and conferred via Zoom videoconference on November 7 and November 22, 2023, regarding the pleading deficiencies raised in Lyft's Motion but were unable to reach a resolution that eliminates the need for Lyft's Motion.

/s/ <u>*Matthew N. Klebanoff*</u>
Matthew N. Klebanoff

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew N. Klebanoff, hereby certify that on December 1, 2023, I caused the foregoing Defendant Lyft, Inc.'s Motion to Dismiss Counts I, II, III, IV and VII and the Punitive Damages Demand of the Amended Complaint of Plaintiff Jane Doe A.F. to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

<u>/s/ *Matthew N. Klebanoff*</u>
Matthew N. Klebanoff

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

**JANE DOE A.F., a pseudonym**

        **Plaintiff,**

    **v.**

**LYFT, INC. and NTIAMOAH BROWN,**

      **Defendants.**

Civil Action No: 2:23-cv-03990-KSM

## BRIEF IN SUPPORT OF DEFENDANT LYFT, INC.'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 2

      A.    Procedural Background ..................................................................................... 2

      B.    The Alleged Incident ........................................................................................ 3

III.  STATEMENT OF QUESTIONS INVOLVED ......................................................... 4

IV.   LEGAL ARGUMENT ............................................................................................... 5

      A.    The Federal Rule of Civil Procedure 12(b)(6) Legal Standard ........................ 5

      B.    Plaintiff's Vicarious Liability Claim Against Lyft (Count II) Fails
            as a Matter of Law ........................................................................................... 6

      C.    Plaintiff's Negligent Undertaking Claim (Count IV) Fails Because
            Lyft Did Not Undertake a Specific Duty to Protect Plaintiff from
            Criminal Acts ................................................................................................. 11

      D.    Plaintiff's Claim for Negligent Misrepresentation (Count VII) Fails
            Because Plaintiff Has Not Alleged Any Actionable Misrepresentation Against
            Lyft ................................................................................................................. 13

      E.    Plaintiff's Direct Negligence Claims Fail as a Matter of Law ........................ 15

            1.    Plaintiff's Claim for Negligence and Gross Negligence
                  (Count I) Fails ....................................................................................... 15

                  a.    *Plaintiff Does Not Adequately Allege That Lyft's Conduct
                        Caused Plaintiff's Alleged Harm* ............................................... 15

                  b.    *Defendant Brown's Alleged Criminal Conduct Constitutes
                        a Superseding Cause of Plaintiff's Harm* ................................... 16

            2.    Plaintiff's Claim for Negligent Hiring, Training, and Supervision (Count
                  III) Fails Because Plaintiff Has Not Plausibly Alleged that
                  Lyft Knew or Should Have Known that Brown Had Dangerous
                  Propensities ......................................................................................... 17

      F.    This Court Should Dismiss Plaintiff's Demand for Punitive Damages
            Because the Amended Complaint Fails to Plausibly Allege that Lyft's Conduct

i

Was Malicious, Intentional, or Reckless in Order to Plausibly Support Punitive Damages ......................................................................................................... 21

V.     CONCLUSION ......................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allegrino v. Conway E & S, Inc.*,
No. 09-cv-1507, 2010 U.S. Dist. LEXIS 106734 (W.D. Pa. Oct. 6, 2010) ....................... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 5, 6

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ....................................................................................... 18, 20

*Berkebile v. Brantly Helicopter Corp.*,
337 A.2d 893 (Pa. 1975) ................................................................................................. 14

*Blewitt v. Man Roland, Inc.*,
168 F. Supp. 2d 466 (E.D. Pa. 2001) .............................................................................. 12

*Boring v. Google Inc.*,
362 F. App'x 273 (3d Cir. 2010) .................................................................................... 21

*Brezenski v. World Truck Transfer, Inc.*,
755 A.2d 36 (Pa. Super. Ct. 2000) ............................................................................. 6, 17

*Browne et al. v. Lyft, Inc.*,
No. 2021-01314, 2023 WL 4918610, at *2 (N.Y. App. Div. Aug. 2, 2023) ....................... 8

*Burns v. Patino*,
No. CIV. A. 98-CV-5605, 1999 WL 552778 (E.D. Pa. July 8, 1999),
*aff'd*, 216 F.3d 1075 (3d Cir. 2000) .................................................................................. 16

*Buttermore v. Loans*,
No. 15-1514, 2016 WL 308875 (W.D. Pa. Jan. 25, 2016).................................................. 20

*Castrol, Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993) ........................................................................................... 13

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016) ....................................................................................... 6, 18

*ConsulNet Computing, Inc. v. Moore*,
2007 WL 2702446 (E.D. Pa. Sept. 12, 2007).................................................................. 15

*Costa v. Roxborough Mem'l Hosp.*,
   708 A.2d 490 (Pa. Super. Ct. 1998) .............................................................. 7, 9

*Dee v. Marriott Int'l, Inc.*,
   No. 99-2459, 1999 U.S. Dist. LEXIS 16159 (E.D. Pa. Oct. 6, 1999) ................................ 10

*Feld v. Merriam*,
   485 A.2d 742 (Pa. 1984) ........................................................................ 11

*Fusco v. Uber Techs., Inc.*,
   No. 17-00036, 2018 U.S. Dist. LEXIS 126428 (E.D. Pa. July 27, 2018) .................. *passim*

*G.B. v. Jade Nails Hair Spa*,
   No. 5:19-cv-06093-JMG, 2021 U.S. Dist. LEXIS 172855
   (E.D. Pa. Sept. 13, 2021) ....................................................................... 10

*Gibbs v. Ernst*,
   647 A.2d 882 (Pa. 1994) ........................................................................ 13

*Gregg v. Lonestar Transp., LLC*,
   No. 3:14-cv-44, 2015 U.S. Dist. LEXIS 27680 (W.D. Pa. Mar. 6, 2015) ........................ 22

*Harris v. KFC U.S. Props.*,
   No. 10-3198, 2012 U.S. Dist. LEXIS 84668 (E.D. Pa. June 18, 2012) ........................... 10

*Heeter v. Honeywell Int'l Inc*,
   706 F. App'x 63 (3d Cir. 2017) ................................................................ 16

*Hittle v. Scripto-Tokai Corp.*,
   166 F. Supp. 2d 142 (M.D. Pa. 2001) ........................................................... 15

*Humphries v. Pennsylvania State University*,
   No. 4:20-cv-00064, 2021 U.S. Dist. LEXIS 182858
   (M.D. Pa. Sept. 24, 2021) ...................................................................... 12

*Hutchison v. Luddy*,
   870 A. 2d 766 (Pa. 2005) ....................................................................... 21

*Jean v. Bucknell Univ.*,
   534 F. Supp. 3d 404 (M.D. Pa. Apr. 16, 2021) .............................................. 11, 12

*Justice v. Lombardo*,
   208 A.3d 1057 (Pa. 2019) ........................................................................ 7

*Kovalev v. Walmart Inc.*,
   Civ. No. 22-1217, 2022 U.S. Dist. LEXIS 185233 (E.D. Pa. Oct. 11, 2022) .............. 21, 23

iv

*Latuska v. Sethuraman*,
    Civ. No. 3:15-208, 2016 U.S. Dist. LEXIS 99089 (E.D. Pa. July 29, 2016) .................... 22

*Lunn v. Boyd*,
    169 A.2d 103 (Pa. 1961) ................................................................................................ 7

*Lux v. Gerald E. Ort Trucking, Inc.*,
    887 A.2d 1281 (Pa. Super. Ct. 2005) ............................................................................ 15

*McCullough v. Peeples*,
    Civ. No. 3:14-123, 2015 U.S. Dist. LEXIS 27683 (W.D. Pa. Mar. 5, 2015).................... 22

*R.A. ex rel. N.A. v. First Church of Christ*,
    748 A.2d 692, 697 (Pa. Super. Ct. 2000) ................................................................. 18, 23

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ....................................................................................................... 5

*Newell v. Montana W. Inc.*,
    154 A.3d 819 (Pa. Super. Ct. 2017) .............................................................................. 11

*Oldham v. Pa. State Univ.*,
    No. 4:23-cv-02364, 2022 WL 1528305 (W.D. Pa. May 13, 2022)................................... 20

*Pokalsky v. SEPTA*,
    No. 02-323, 2002 U.S. Dist. LEXIS 16175 (E.D. Pa. Aug. 29, 2002)............................... 7

*Reckner v. County of Fayette*,
    No. 11-cv-0745, 2011 U.S. Dist. LEXIS 96844 (W.D. Pa. Aug. 29, 2011) ...................... 17

*Sanchez by Rivera v. Montanez*,
    645 A.2d 383 (Pa. Commw. Ct. 1994)........................................................................... 10

*Spitsin v. WGM Transp., Inc.*,
    97 A.3d 774 (Pa. Super. Ct. 2014) .......................................................................... 7, 8, 9

*Turbe v. Gov't of Virgin Islands*,
    938 F.2d 427 (3d Cir. 1991).......................................................................................... 11

*Vaughn v. Cap. One Bank (USA)*,
    No. CV 22-3615, 2023 WL 2588552 (E.D. Pa. Mar. 21, 2023) ...................................... 16

## Statutes

53 Pa.C.S. § 57A01 *et seq* ................................................................................................. 1

## Other Authorities

Fed. R. Civ. P. 12(b)(6)...........................................................................................*passim*

Restatement (Second) of Agency § 228 ........................................................................ 7

Restatement (Second) of Torts § 323 ................................................................. 11, 12

## I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Lyft, Inc. ("Lyft")[1] moves to dismiss all of the claims asserted against Lyft in the Amended Complaint of Plaintiff Jane Doe A.F. ("Plaintiff") – specifically, Counts I, II, III, IV and VII and the punitive damages demand – for failure to state a claim upon which relief can be granted. In the Amended Complaint, Plaintiff alleges that Defendant Ntiamoah Brown ("Brown") intentionally sexually assaulted Plaintiff while she was a passenger in a ride by Brown that was requested on the Lyft Platform. (The Amended Complaint is attached hereto as **Exhibit A**.) In her Amended Complaint, Plaintiff asserts claims against Lyft for: (a) negligence and gross negligence (Count I); (b) negligence – vicarious liability (Count II); (c) negligence and gross negligence – hiring, training and supervision (Count III); (d) negligent performance of undertaking to render services (Count IV); and (e) negligent misrepresentation (Count VII). The Amended Complaint also includes a demand for punitive damages.

These claims and Plaintiff's demand for punitive damages all fail as a matter of Pennsylvania law for the following reasons (as articulated more fully below):

1. Plaintiff's vicarious liability claim (Count II) fails as a matter of law because Pennsylvania law is clear that Lyft cannot be held vicariously liable for intentional, criminal acts of Brown such as those alleged here. (This is so regardless of whether Brown is an employee or independent contractor, which is not before the Court on this Motion because it is irrelevant, for the reasons discussed below.)

2. Plaintiff's claim against Lyft for "negligent performance of undertaking to render services" (Count IV) also fails, given that Plaintiff cannot show that Lyft undertook any specific duty to protect Plaintiff from Defendant Brown's alleged criminal acts.[2]

---

[1] Lyft is a Transportation Network Company (TNC), as defined under Pennsylvania law (*see* 53 Pa.C.S. § 57A01 *et seq).*, that connects riders and drivers through Lyft's website, application and technology platform (the "Lyft Platform"), pursuant to Lyft's Terms of Service.

[2] Less than a year ago, the Philadelphia County Court of Common Pleas (in which Plaintiff filed this lawsuit before Lyft timely removed it to this Court) dismissed claims against Lyft for

3.    Plaintiff's negligent misrepresentation claim (Count VII) constitutes, at most, non-actionable "puffery" under Pennsylvania law because it is based solely on allegations that Lyft generally marketed itself as a safe option for women.

4.    Plaintiff's claim for negligence and gross negligence (Count I) fails because Plaintiff fails to allege how Lyft's conduct caused the alleged harm to Plaintiff, and because Defendant Brown's alleged criminal acts constitute a superseding cause of Plaintiff's alleged injury (thus breaking any purported chain of causation as to Lyft).

5.    Plaintiff's claim for negligence and gross negligence – hiring, training, and supervision (Count III) is legally insufficient where Plaintiff has not plausibly alleged that Lyft knew or should have known that Brown had dangerous propensities.

6.    Even if Plaintiff's negligence claims against Lyft somehow survive the pleadings stage (but they should not), Plaintiff's punitive damages demand against Lyft cannot. The facts, as pleaded, do not plausibly allege that Lyft's conduct was so outrageous as to clear the high bar of establishing that Lyft acted with an "evil motive" or "reckless indifference" as required under Pennsylvania law to support punitive damages.

Because Plaintiff does not allege facts that plausibly give rise to an entitlement to relief on any of these claims, Lyft respectfully requests that the Court dismiss Counts I, II, III, VI, and VII and Plaintiff's punitive damages demand with prejudice under Fed. R. Civ. P. 12(b)(6).[3]

## II.    BACKGROUND

### A.    Procedural Background

On October 11, 2023, Plaintiff filed a Complaint against Defendants Lyft and Brown in the Pennsylvania Court of Common Pleas, Philadelphia County. On October 16, 2023, Lyft

---

vicarious liability and negligent undertaking (Counts II and IV here) *with prejudice at the pleadings stage* for the same reasons that Lyft seeks dismissal here: the intentional criminal acts alleged in the Amended Complaint against a driver on the Lyft Platform cannot possibly support these causes of action, and thus Plaintiff's Amended Complaint fails to state a claim on which relief can be granted as a matter of clear Pennsylvania law. The January 18, 2023 Order of the Court of Common Pleas in this other case is attached hereto as **Exhibit B**. Lyft suspects that Plaintiff is already aware of the *Jane Doe Q.C.* case in which this Order was entered because Plaintiff's negligent performance of undertaking to render services (Count IV) claim – aside from updating the names of the parties – appears to be lifted verbatim from that complaint.

[3] Having alleged in the Amended Complaint Brown's intentional criminal acts, any request by Plaintiff for further amendment would be futile, as further discussed herein.

timely removed the state court action to this Court. (ECF No. 1). On November 10, 2023, Plaintiff filed the Amended Complaint. (**Ex. A**.)

B.     **The Alleged Incident[4]**

The Amended Complaint alleges that on August 12, 2021, at 1:14 a.m., Plaintiff and her friend became passengers in a vehicle driven by Brown in a ride Plaintiff requested through the Lyft platform. (**Ex. A** ¶¶ 23, 26.)[5] After dropping off Plaintiff's friend at the friend's residence, Brown and Plaintiff continued the ride toward Plaintiff's destination. (*Id.* ¶ 30.) Brown began asking Plaintiff "inappropriate and harassing questions" and then "pull[ed] the car to the side of the road . . . and entered the back seat where Plaintiff was seated." (*Id.* ¶¶ 31, 33.) Brown then removed Plaintiff's pants, forced oral sex on Plaintiff, and "forced his penis into Plaintiff's vagina, raping her repeatedly." (*Id.* ¶¶ 34-36.) Plaintiff then exited the car and returned home. (*Id.* ¶ 37.) Several hours later, at or around 7:47 a.m., Plaintiff contacted Lyft about the incident. (*Id.* ¶ 39.) In the Amended Complaint, Plaintiff pleads that this incident was a "violent sexual assault" (*id.* ¶ 7) of Plaintiff. Plaintiff further alleges that Brown "intended to cause a harmful or offensive contact with the body of Plaintiff," and that Brown's actions were "willful" and "outrageous." (*Id* ¶¶ 184, 187.)

---

[4] The following factual allegations are taken from the Amended Complaint (**Ex. A**). Lyft does not admit any of the allegations, but rather assumes them to be true *solely* for purposes of this Motion to Dismiss. Lyft reserves the right to later contest any factual allegations, if necessary.

[5] Confusingly, paragraph 23 of the Amended Complaint is followed by "paragraph 26" – *i.e.* rather than paragraph 24. For purposes of clarity, Lyft cites to the numbered paragraphs as they appear in the Amended Complaint.

### III.   STATEMENT OF QUESTIONS INVOLVED

A.     Should this Court dismiss Count II of Plaintiff's Amended Complaint for

Vicarious Liability because Brown's alleged intentional, criminal sexual assault of Plaintiff falls

outside the scope of any alleged employment relationship with Lyft as a matter of law?

*Suggested Answer:  Yes.*

B.     Should this Court dismiss Count IV of Plaintiff's Amended Complaint for

Negligent Performance of Undertaking to Render Services because Plaintiff has failed to

sufficiently allege that Lyft undertook a specific duty to protect Plaintiff against Defendant

Brown's criminal acts?

*Suggested Answer:  Yes.*

C.     Should this Court dismiss Count VII of Plaintiff's Amended Complaint for

Negligent Misrepresentation because Plaintiff's claim is premised on allegations that Lyft made

general promises of safety, which at most constitute non-actionable puffery under well-

established Pennsylvania law?

*Suggested Answer:  Yes.*

D.     Should this Court dismiss Count I of Plaintiff's Amended Complaint for

Negligence and Gross Negligence because (i) Plaintiff fails to adequately plead how Lyft's

conduct caused the alleged harm to Plaintiff; and (ii) Defendant Brown's criminal conduct

constitutes a superseding cause of Plaintiff's alleged injuries that breaks any purported chain of

causation as to Lyft?

*Suggested Answer:  Yes.*

E.     Should this Court dismiss Count III of Plaintiff's Amended Complaint for

Negligence and Gross Negligence – Negligent Hiring, Training, and Supervision because

Plaintiff has failed to adequately plead that Lyft knew or should have known that Brown had a

propensity to engage in dangerous conduct?

> **Suggested Answer:  Yes.**

    F.      Should this Court dismiss Plaintiff's claim for punitive damages because Plaintiff

failed to sufficiently allege that Lyft acted with an evil motive or reckless indifference?

> **Suggested Answer:  Yes.**

## IV.    LEGAL ARGUMENT

### A.    The Federal Rule of Civil Procedure 12(b)(6) Legal Standard

Federal Rule of Civil Procedure 12(b)(6) "authorizes a court to dismiss a claim on the

basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). To survive a

motion to dismiss, the complaint must plead sufficient "[f]actual allegations . . . to raise a right to

relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(quotation omitted). A complaint does not suffice if it "tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 557). If, "as a matter of law 'it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations,' a claim must be dismissed, without

regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing

one." *Neitzke*, 490 U.S. at 327 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible only "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(quoting *Twombly*, 550 U.S. at 556). In assessing the plausibility of a plaintiff's claims, the Court

must disregard allegations that "offer[] labels and conclusions" or "tender[] naked assertions

devoid of further factual enhancement." *Id.* (internal citations and formatting omitted).

Considering only the "well-pleaded, nonconclusory factual allegation[s]," *id.* at 680, the Court

determines whether those allegations, taken as true, "[are] enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the complaint . . . has not

'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)). If the plaintiff does not allege facts that plausibly give rise to an entitlement to relief, the

Court must dismiss inadequately pleaded claims under Rule 12(b)(6). *See Connelly v. Lane*

*Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

### B. Plaintiff's Vicarious Liability Claim Against Lyft (Count II) Fails as a Matter of Law

Lyft cannot be held vicariously liable here because, under well-settled Pennsylvania law,

Defendant Brown's intentionally tortious, criminal alleged conduct falls well outside the scope of

any claimed employment or agency relationship between Lyft and Brown.[6]

Plaintiff alleges that Lyft is vicariously liable for Brown's intentional criminal conduct on

the basis that Brown was acting as Lyft's agent, servant, or employee at the time of the alleged

assault. (**Ex. A ¶¶** 49-152.) Under Pennsylvania law, while an employer can be held vicariously

liable for the intentional or criminal acts of an employee in certain limited circumstances, "if the

act is done for personal reason, or in an outrageous manner, it is not done within the scope of

employment." *Brezenski v. World Truck Transfer, Inc.,* 755 A.2d 36, 39 (Pa. Super. Ct. 2000). An

---

[6] Lyft disputes that Brown is an "employee" of Lyft (*see, e.g.*, **Ex. A ¶** 150) but assumes the truth of Plaintiff's allegations solely for purposes of this Motion to Dismiss, and thus the Court need not address this issue in order to rule in Lyft's favor on this Motion. Lyft reserves the right to contest any allegations that Brown was an "employee" of Lyft – as opposed to what he actually was, an independent contractor – should that later be necessary.

employee's conduct is only considered "within the scope of employment" for purposes of vicarious liability if:

> (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

*Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998) (citing *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271-72 (Pa. Super. Ct. 1979) (Restatement (Second) of Agency § 228)).

Courts applying Pennsylvania law have routinely found that defendant employers are not vicariously liable for criminal or intentional attacks of drivers (including when there is an employment relationship with the driver) against passengers, holding that such attacks are outside the scope of employment as a matter of law. *See, e.g., Lunn v. Boyd*, 169 A.2d 103 (Pa. 1961) (taxicab company employer held not liable as a matter of law for taxicab driver employee's physical assault of plaintiff outside of cab while plaintiff summoning cab ride); *Justice v. Lombardo*, 208 A.3d 1057 (Pa. 2019) (noting that "if the act of assault, although a means of accomplishing an authorized result [such as police using force as part of police work], is done for personal reasons or in an outrageous manner, it is not done within the scope of the employment") (citing *Lunn*, 169 A.2d at 104-05); *Spitsin v. WGM Transp., Inc.*, 97 A.3d 774 (Pa. Super. Ct. 2014) (affirming dismissal of vicarious liability claims against defendant taxicab company when employee driver physically assaulted passenger while attempting to collect the cab fare); *Fusco v. Uber Techs., Inc.*, No. 17-00036, 2018 U.S. Dist. LEXIS 126428, at *30-31 (E.D. Pa. July 27, 2018) (granting Uber's motion to dismiss claims that it was vicariously liable for an attack on the plaintiff by one of Uber's drivers because "the brutality of the beating takes the act outside the scope of employment as a matter of law"); *Pokalsky v. SEPTA*, No. 02-323, 2002 U.S. Dist. LEXIS

16175, at *32 (E.D. Pa. Aug. 29, 2002) (granting motion to dismiss and concluding that transportation company could not be held liable under a theory of *respondeat superior* for an intentional rape by its driver); *see also* **Ex. B** (dismissing Count II for Negligence – Vicarious Liability).[7]

In *Spitsin*, for example, the Pennsylvania Superior Court refused to hold a taxi cab company vicariously liable for an employee-driver's intentional use of force against a passenger. 97 A.3d at 781. Within the course and scope of his employment, a taxi cab driver (Johnson) picked up a passenger (Spitsin). *Id.* at 775. At some point, Johnson brought Spitsin to a convenience store, ostensibly so that Spitsin could withdraw funds to pay his fare. *Id.* Spitsin instead attempted to flee and avoid paying the fare, but a bystander tackled and restrained him. *Id.* at 776. While Spitsin was restrained, Johnson physically assaulted Spitsin in an attempt to collect the fare owed for the ride, causing serious injuries. *Id.* Spitsin sued both Johnson and the taxi cab company seeking damages from the latter on a *respondeat superior* theory. *Id.*

On appeal, the Superior Court affirmed dismissal – *on a motion to dismiss (demurrer) filed at the pleadings stage, as here* – of the vicarious liability claim, finding that, while part of Johnson's employment involved collecting fares from customers, "[p]hysical violence in such extreme measure . . . could not serve [the employer's] purposes regarding [collection of] the fare." *Id.* at 781. Because nothing in the facts, as pleaded, alleged that any affirmative act by Johnson's employer led Johnson to act so brutally toward Spitsin or "contributed to Johnson's

---

[7] A New York State appellate court likewise recently held in *Browne et al. v. Lyft, Inc.* that the trial court erred in not granting Lyft's motion to dismiss a claim that it was vicariously liable for a driver's sexual misconduct while providing a ride on the Platform. No. 2021-01314, 2023 WL 4918610, at *2 (N.Y. App. Div. Aug. 2, 2023). The *Browne* court reasoned that because the alleged conduct "was a departure from his duties as a Lyft driver and was committed solely for personal motives unrelated to Lyft's business . . . the sexual misconduct cannot be said to have been within the scope of employment." *Id.* (citation omitted).

apparent belief that his fare-collection responsibilities . . . extended . . . to the excessive and punitive brutality inflicted by Johnson on Spitsin," Johnson's use of force was excessive and thus outside the scope of his employment, as a matter of law. *Id.* at 781-82. It would be "unreasonable to hold [his employer] liable for such an event." *Id.*at 782.[8]

Similarly, in *Fusco*, this Court dismissed the plaintiff's claims against another Transportation Network Company, Uber, concluding as a matter of law that Uber could not be vicariously liable for a physical assault on the plaintiff by a driver providing a ride on the Uber platform. 2018 U.S. Dist. LEXIS 126428, at *30-31. As an initial matter, the Court held that (as here) the plaintiff failed to allege that the assault was motivated by any purpose to serve Uber. *Id.* at *28-29. The Court further held that even if the plaintiff could allege such facts, the vicarious liability claims still failed as a matter of law:

> Here, Plaintiff alleges that Defendant's driver "dragged Plaintiff out of the front seat by his coat collar and severely beat Plaintiff, breaking multiple[] bones on his face, knocking out teeth, and leaving him in a pool of blood on the pavement," and that the driver "stomped and kicked Plaintiff in the face and head while he was already unconscious." (Compl. ¶ 5). These allegations are similar to and at least as outrageous as the ones in [*Spitsin v. WGM Transp., Inc*., 97 A.3d 774 (Pa. Super. Ct. 2014)], which also involved a cab driver kicking a passenger on the ground. Therefore, even if it were possible to read Plaintiff's Complaint as alleging a purpose to serve Defendant, the brutality of the beating takes the act outside the scope of employment as a matter of law.

*Id*. at *30-31.

Courts analyzing vicarious liability claims for intentional assault outside of the driver/passenger context have reached the same conclusion. *See, e.g. Costa*, 708 A.2d at 495 (holding that an employee's assault of another employee at work was "precisely the type of act which is so willful, excessive, outrageous, and without responsibility, as to exceed his scope of

---

[8] The court's opinion is *Spitsin* was authored by Judge David Wecht, who now serves as Justice Wecht on the Pennsylvania Supreme Court.

employment, and for which as a matter of law, the Hospital cannot be found vicariously liable"); *G.B. v. Jade Nails Hair Spa*, No. 5:19-cv-06093-JMG, 2021 U.S. Dist. LEXIS 172855, at *10 (E.D. Pa. Sept. 13, 2021) (holding that a spa could not be held vicariously liable for a masseuse's sexual assault of the plaintiff during a massage because the masseuse was acting outside scope of his employment when he sexually assaulted the plaintiff); *Harris v. KFC U.S. Props*., No. 10-3198, 2012 U.S. Dist. LEXIS 84668, at *15-16 (E.D. Pa. June 18, 2012) (holding that an employee's "vicious attack" of a customer was "outrageous and criminal and certainly far from the scope of his employment"); *Dee v. Marriott Int'l, Inc*., No. 99-2459, 1999 U.S. Dist. LEXIS 16159, at *11-12 (E.D. Pa. Oct. 6, 1999) (granting motion to dismiss and holding that Marriott could not be held vicariously liable for its employee's assault and rape of another employee at work because the assault and rape was outside the course and scope of employment); *Sanchez by Rivera v. Montanez*, 645 A.2d 383, 391-92 (Pa. Commw. Ct. 1994) (affirming summary judgment that community action agency was not vicariously liable for its employee's molestation of a child because the actions of the employee were so clearly outrageous and motivated by purely personal reasons).

Under clear and abundant Pennsylvania precedent – and even assuming the existence of an employment relationship with Lyft solely for purposes of this Motion – Brown's intentional sexual assault of Plaintiff was so plainly outrageous and not possibly actuated by any purpose to serve Lyft that it falls readily outside the scope of any alleged employment relationship as a matter of law. This is not a close call. There are no circumstances under which Lyft may be vicariously liable to Plaintiff for Brown's intentional and "violent sexual assault" of Plaintiff, and thus Count II of the Amended Complaint should be dismissed, with prejudice, and without leave to amend. *See, e.g.*, *Fusco*, 2018 U.S. Dist. LEXIS 126428, at *31 ("[B]ecause any amendment would be futile in light of the clear egregiousness of the attack, I will dismiss these claims with prejudice.").

**C.      Plaintiff's Negligent Undertaking Claim (Count IV) Fails Because Lyft Did Not Undertake a Specific Duty to Protect Plaintiff from Criminal Acts**

Lyft cannot be held liable for negligent undertaking because Plaintiff has failed to plausibly allege that Lyft voluntarily undertook a duty to protect Plaintiff. To the extent Plaintiff asserts a duty based on the allegation that Lyft marketed itself as a safe option for women, Pennsylvania law is clear that simply enacting policies or making generalized promises does not impose affirmative duties on entities. Plaintiff's negligent undertaking claim accordingly fails.

In Count IV of the Amended Complaint, Plaintiff alleges that, by providing transportation services, Lyft undertook a duty to protect Plaintiff from Brown's intentional criminal conduct pursuant to Section 323 of the Restatement (Second) of Torts.[9] (**Ex. A ¶¶** 167-68.) To prevail on a claim under Section 323 of the Restatement (Second) of Torts, a plaintiff must establish more than the fact that the defendant negligently performed a duty owed to another; a plaintiff must also show that the defendant ***voluntarily assumed a duty to protect***. *Newell v. Montana W. Inc.*, 154 A.3d 819, 838 (Pa. Super. Ct. 2017). Thus, whether an individual owes a duty under Section 323 of the Restatement will depend upon whether such individual engaged in "affirmative conduct." *Feld v. Merriam*, 485 A.2d 742, 746 (Pa. 1984).

"The foundational requirement . . . is that in order for liability to be imposed upon the actor, he must ***specifically have undertaken to perform the task that he is charged with having performed negligently***, for without the actual assumption of the undertaking there can be no

---

[9] This Restatement provision – known as the "Good Samaritan exception" – is a departure from Pennsylvania's general rule that there is no duty to protect against harm by third parties. *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 430 (3d Cir. 1991). "Under § 323, liability is imposed under certain circumstances when the defendant provides services he should recognize are necessary for the protection of another." *Id.* Pennsylvania courts, however, take a "***restrictive***" approach to Section 323, cautioning that promises "may not expect more than is offered." *Jean v. Bucknell Univ.*, 534 F. Supp. 3d 404, 414 (M.D. Pa. Apr. 16, 2021) (emphasis added).

correlative legal duty to perform that undertaking carefully." *See Blewitt v. Man Roland, Inc.,* 168 F. Supp. 2d 466, 469-70 (E.D. Pa. 2001) (emphasis added). To that end, parties will be found liable under Section 323 only where they have "engaged in a specific undertaking, as opposed to a general promise." *Jean*, 534 F. Supp. 3d at 414.

To illustrate, in *Humphries v. Pennsylvania State University*, No. 4:20-cv-00064, 2021 U.S. Dist. LEXIS 182858, *23 (M.D. Pa. Sept. 24, 2021), the court found that the plaintiff's claim that Penn State University and its head football coach "undertook a duty to control football players . . . to conform their behavior to the Student Code of Conduct and Administrative Policies" was "nothing more than a policy-based claim that this Court, and other courts, have rejected" as sufficient to impose a duty to protect. *Accord Jean*, 534 F. Supp. 3d at 415 (holding that general promise to combat hazing on campus did not impose duty on university under Section 323). The failure to have adequate policies in place is also not enough to give rise to a duty under Section 323. *See id.* (finding no duty under Section 323 because "failing to 'have' an adequate policy is not sufficient to trigger section 323"); *see also* **Ex. B** (dismissing Count IV for Negligent Performance of Undertaking to Render Services).

Here, the Amended Complaint does not set forth any allegations of a specific undertaking by Lyft to protect Plaintiff. There are no allegations that Lyft engaged in any affirmative conduct or ever made any concrete or specific promise to protect Plaintiff from harm of any kind. At best, Plaintiff alleges that Lyft "should have recognized" that Plaintiff "needed to be protected from" Brown. (**Ex. A ¶ 168.**) Not only does this allegation fail to come close to the pleading standard for a negligent undertaking claim, but it is wholly unsupported and does not create any inference that Lyft is liable for the misconduct alleged.

**D.      Plaintiff's Claim for Negligent Misrepresentation (Count VII) Fails Because Plaintiff Has Not Alleged Any Actionable Misrepresentation Against Lyft**

Plaintiff's claim for negligent misrepresentation should also be dismissed because Plaintiff has failed to adequately plead that Lyft made any material misstatement of fact. At most, the limited averments of fact in the Amended Complaint allegedly in support of such a claim fall into the non-actionable category of "puffery," just as Pennsylvania courts have recognized.

To plausibly state a claim for negligent misrepresentation, a plaintiff must allege: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known of its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994). Actionable misrepresentation is "confined to statements . . . of fact, and do[es] not reach the category of exaggerated sales-talk known as 'puffery.'" *Fusco*, 2018 U.S. Dist. LEXIS 126428, at *15. Whether a statement constitutes a fact capable of underpinning a misrepresentation claim or mere puffery is "a legal question that may be determined from the allegations in the complaint." *Id.* (citing *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203, 216 (Pa. Commw. Ct. 2017)).

Puffery is defined as "exaggeration or overstatement expressed in broad, vague, and commendatory language." *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993). It includes general terms of superiority like "good," "superb," and "top-notch," which convey "only the seller's opinion that its product is superior, such that no consumer could claim to have justifiably relied on them." *Fusco*, 2018 U.S. Dist. LEXIS 126428, at *16 (internal citations omitted). While a statement concerning quality can constitute actionable misrepresentation if it is phrased in absolute terms, a general statement that a product is safe "is puffery because it conveys only the seller's judgment that the risk is low enough to be called 'safe.'" *See id.* at *16-

13

17 (noting that a claim that a product is "safe" generally is puffery because "there is no way to prove that a product is not 'good,' 'dependable,' or, in the abstract, 'safe'")) (internal citations omitted); *see also Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 903 (Pa. 1975) (holding statement that "you are assured of a safe, dependable helicopter" was non-actionable puffery).

Here, the Amended Complaint does not contain any allegations claiming that Lyft represented its service to be absolutely safe. Instead, the face of the Amended Complaint shows that Plaintiff's negligent misrepresentation allegations are premised on broad allegations that Lyft generally marketed itself as a safe option for women. (*See* **Ex. A** ¶ 48 (alleging that "Lyft markets itself on Rider Safety and Commitment to Safety. With serval [sic] marketing images that directly target the safety of women"); *id.* ¶ 99 (alleging that Lyft's President publicly stated that safety is fundamental to Lyft, and that Lyft creates "features and policies to give riders and drivers peace of mind.")).

Under Pennsylvania law, these general promises of safety fall squarely within the category of non-actionable puffery – just as this Court in *Fusco* recognized when it ***dismissed as insufficient a negligent misrepresentation claim against Uber*** premised on Uber marketing itself as "safe," similar to the allegations Plaintiff makes here. *See Fusco*, 2018 U.S. Dist. LEXIS 126428, at *22 ("Defendant's representation that its service was "safe[]" could be actionable if the statement were absolute, [but] Plaintiff does not argue that Defendant represented its service to be absolutely safe, and, indeed, it would be unreasonable to read the alleged statements in absolute terms."). Similarly, Plaintiff here alleges that "Lyft lacked a meaningful background check and/or vetting process," including because it did not require "the "submission of fingerprints of its prospective drivers," (**Ex. A** ¶¶ 91-92), but as in *Fusco*, "although Plaintiff lists additional steps that Defendant could have taken to screen applicants, he does not argue that any

were so inherent in the meaning of the word 'background check' that the word became misleading in their absence." *See Fusco*, 2018 U.S. Dist. LEXIS 126428, at *19; *see also ConsulNet Computing, Inc. v. Moore*, 2007 WL 2702446, at *9-10 (E.D. Pa. Sept. 12, 2007) (explaining that promises that a product will alleviate worry or provide peace of mind are not objectively measurable and therefore constitute puffery); *Hittle v. Scripto-Tokai Corp.*, 166 F. Supp. 2d 142, 158-59 (M.D. Pa. 2001) (rejecting plaintiff's contention that defendant misrepresented that a lighter was safe for household use by depicting birthday candles, a fireplace log, and charcoal on its packaging).

In summary, because Plaintiff's claim for negligent misrepresentation is based entirely on allegations of – at most – non-actionable puffery, it should be dismissed with prejudice.

### E.      Plaintiff's Direct Negligence Claims Fail as a Matter of Law

In Counts I and III of the Amended Complaint, Plaintiff asserts claims against Lyft for negligence and gross negligence in failing to control Brown, and for negligent hiring, training, and supervision. (**Ex. A**, Counts I and III.) For the reasons discussed below, Plaintiff cannot establish either claim.

1.      Plaintiff's Claim for Negligence and Gross Negligence (Count I) Fails

a.      *Plaintiff Does Not Adequately Allege That Lyft's Conduct Caused Plaintiff's Alleged Harm*

Count I fails because Plaintiff has not pleaded that any of the measures Plaintiff alleges Lyft should have taken in order to adequately "control" Brown ***would actually have prevented the alleged harm to Plaintiff***, in order to establish causation. *See Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1287 (Pa. Super. Ct. 2005) ("In order to establish causation, the plaintiff must prove that the breach was 'both the proximate and actual cause of the injury.'") (citation omitted). For example, given the lack of any prior misconduct or criminal history in Brown's

15

background, how could Lyft "requir[ing] all drivers to immediately report to Lyft any charge involving kidnapping, violence, physical force, kidnapping and/or any charge involving physical and/or sexual assault" have prevented the alleged harm to Plaintiff? Plaintiff simply fails to plead a causal connection between what she asserts Lyft could have done differently, and her harm.

b.   *Defendant Brown's Alleged Criminal Conduct Constitutes a Superseding Cause of Plaintiff's Harm*

Count I fails for the additional reason that the alleged deliberate criminal acts of Defendant Brown were the intervening and/or superseding cause of Plaintiff's alleged harm, such that any proximate causation vis-à-vis Lyft is lacking.

"Negligence requires the defendant's breach of duty to be the proximate cause of the plaintiff's injury or loss." *Vaughn v. Cap. One Bank (USA)*, No. CV 22-3615, 2023 WL 2588552, at *5 (E.D. Pa. Mar. 21, 2023) (citing *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003)). "If the chain of events leading from a defendant's negligent act to a plaintiff's harm is so remote as to appear 'highly extraordinary' that the conduct could have brought about the harm, then the act did not proximately cause the harm as a matter of law." *Burns v. Patino*, No. CIV. A. 98-CV-5605, 1999 WL 552778, at *6 (E.D. Pa. July 8, 1999), *aff'd*, 216 F.3d 1075 (3d Cir. 2000) (citing *Bell v. Irace*, 619 A.2d 365, 367 (Pa. Super. Ct. 1993)).

Intervening criminal action is not *per se* superseding, but becomes so when, "looking retrospectively from the harm through the sequence of events by which it was produced, it is so extraordinary as not to have been reasonably foreseeable." *Heeter v. Honeywell Int'l Inc*, 706 F. App'x 63, 67 (3d Cir. 2017) (affirming grant of motion to dismiss based on failure to sufficiently allege proximate causation, reasoning that because the chain of events and ultimate harm were not foreseeable, the criminal action of third party was a superseding cause of harm that broke the causal chain); *see also Vaughn*, 2023 WL 2588552, at *5 (dismissing negligence claim against

16

Capital One based on allegations that employee of plaintiff-employer used plaintiff-employer's Capital One credit card to make fraudulent purposes, stating "[i]t is abundantly clear from the facts alleged in the amended complaint that Davis committed numerous tortious and criminal acts and was a superseding cause of the lost funds. Capital One was not the proximate cause of [plaintiff's] harm and his negligence claim therefore fails as a matter of law"); *Reckner v. County of Fayette*, No. 11-cv-0745, 2011 U.S. Dist. LEXIS 96844, at *18 (W.D. Pa. Aug. 29, 2011) (dismissing negligence claim against county based on alleged lack of surveillance because correction officers' alleged intentional assault of plaintiff was "a superseding cause of Plaintiff's injury and thus proximate causation cannot be established") (citing *Ford v. Jeffries*, 379 A.2d 111, 115 (Pa. 1977)).

Here, Brown's alleged criminal sexual assault was so "extraordinary" such that it was not "reasonably foreseeable" to Lyft (*id.*), and as a result, it constitutes a superseding cause that breaks any purported chain of causation as to Lyft here. Accordingly, Plaintiff has not sufficiently alleged proximate cause and Count I must be dismissed.

      2.      <u>Plaintiff's Claim for Negligent Hiring, Training, and Supervision (Count III) Fails Because Plaintiff Has Not Plausibly Alleged that Lyft Knew or Should Have Known that Brown Had Dangerous Propensities</u>

Plaintiff's claim for negligent hiring, retention, and supervision should also be dismissed for failure to plausibly allege facts from Brown's past that would have put Lyft on notice of a risk of violence. To make out a claim for negligent hiring, a plaintiff must show that an employer, knowing or on notice of an applicant's propensity for misconduct, nevertheless hired the individual and so exposed the plaintiff to danger. *Brezenski*, 755 A.2d at 39-40. To establish a claim for negligent supervision or training, a plaintiff must demonstrate an employer failed "to exercise ordinary care to prevent an intentional harm to a third party which (1) is committed on the employer's premises by an employee acting outside the scope of his employment and (2) is

reasonably foreseeable." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487-88 n.24 (3d Cir. 2013) (citation omitted). An employer can only be liable for negligent supervision if the plaintiff shows that the employer knew or should have known of a need to supervise an employee, and that the employer's failure to do so exposed the plaintiff to the employee's misbehavior. *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 697 (Pa. Super. Ct. 2000).

Under any of these three theories, the plaintiff must show that "the employee's prior bad acts would have put a reasonable employer on notice of the employee's propensity to injure others." *Fusco*, 2018 U.S. Dist. LEXIS 126428, at *11-12 (citing *Heller v. Patwil Homes*, 713 A.2d 105, 108 (Pa. Super. Ct. 1998)). A complaint that only generally alleges that an employee as unqualified or dangerous is "merely 'speculative'" and therefore "insufficient to progress past the pleading stage." *Fusco*, 2018 U.S. Dist. LEXIS 126428 at *12-13. For this reason, "federal courts routinely dismiss negligent hiring claims under Rule 12(b)(6) if the plaintiff fails to allege a specific instance of past misconduct." *Id.* at *13 (citations omitted).

Plaintiff's Amended Complaint is not supported by ***any*** factual allegations – much less allegations of "specific instances of [Brown's] past misconduct" – that could possibly permit Count III to progress past the pleadings stage. Instead, Count III appears to be a re-packaging of Plaintiff's general negligence claim in Count I, replete with broad, unsupported allegations that Lyft either failed to take proper or reasonable security measures or failed to protect Plaintiff against sexual assault. (**Ex. A** ¶ 163.) These are conclusory statements, which are not entitled to a presumption of truth and must be disregarded as legal conclusions. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789-90 (3d Cir. 2016) (as part of motion to dismiss analysis, the Court must "identify those allegations that, being merely conclusory, are not entitled to the presumption of truth," and "affirmatively disregard[] a pleading's legal conclusions").

18

*__Negligent Hiring__*. Plaintiff cannot establish a claim for negligent hiring based on vague, unsupported allegations that Lyft failed to, e.g., perform adequate "screening on [Brown],"[10] to "require [Brown] to undergo in-person interviews," or to "adequately have policies in place to perform appropriate background and criminal activity checks." (**Ex. A** ¶ 163.) First, Plaintiff does not point to any information suggesting that Lyft should have conducted additional screening before hiring Brown, let alone that a more thorough screening process ***would have uncovered a propensity for dangerous behavior***. *See Fusco*, 2018 U.S. Dist. LEXIS 126428, at *13 ("Although Plaintiff alleges that a reasonable employer in Defendant's position would have conducted additional screening before hiring the driver, this allegation does not state a claim for negligent hiring ***unless it is further alleged that a more thorough screening process would have uncovered signs of violent behavior***.") (emphasis added). Moreover, the Amended Complaint does not address what kind of background checks or "screenings" *were* performed by Lyft, to say nothing of why those processes were allegedly inadequate.

*__Negligent Supervision__*. Plaintiff's negligent supervision claim also fails. Plaintiff alleges that Lyft negligently supervised Brown by "failing to monitor [his] interactions" – including by, e.g., "fail[ing] to deploy a service to check on drivers and passengers if the Lyft ride stops unexpectedly somewhere, veers far off course, or takes much longer than expected to complete the ride" and "failing to disable child lock and window lock features on driver vehicles." **Ex. A** ¶ 163. However, the duty to supervise only arises if Lyft "knew or should have known of a need to supervise [Brown]." The Amended Complaint does not allege that Brown previously engaged

---

[10] For example, Plaintiff alleges that one of the ways Lyft was "negligent, grossly negligent, careless, and reckless" was that Lyft failed "require all prospective drivers to utilize Live Scan, a fingerprint-based background check which is administered through the Department of Justice and the FBI databases." **Ex. A** ¶ 163. However, Plaintiff does not allege anything negative or concerning in Brown's background that such a background check would have uncovered.

in any dangerous behavior at all, let alone that he previously committed any violent and/or sexual assaults. Plaintiff also repeatedly alleges that Brown's conduct occurred "within the course and scope of [his] employment" for Lyft. (*See, e.g.* **Ex. A ¶** 152.) This is inconsistent with a negligent supervision claim:

> To recover for negligent supervision under Pennsylvania law, a plaintiff must prove that his loss resulted from (1) a failure to exercise ordinary care to prevent an intentional harm by an employee ***acting outside the scope of his employment***, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee.

*Belmont*, 708 F.3d at 488 (emphasis added) (citing *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 420 (Pa. 1968); *Heller*, 713 A.2d at 107-08).

**<u>*Negligent Training*</u>**. Plaintiff has likewise failed to sufficiently allege a claim for negligent training. The Amended Complaint alleges that Lyft failed "to adequately train employees to not engage in sexual assault and abuse." (**Ex A ¶** 163.) Plaintiff fails to point to any legal duty that would require such training, nor to any facts regarding what kind of training Lyft does provide, what policies and procedures Lyft has in place, or why those policies and procedures are insufficient. *See Oldham v. Pa. State Univ.*, No. 4:23-cv-02364, 2022 WL 1528305, at *24 (W.D. Pa. May 13, 2022) (dismissing claim for negligent training where plaintiff alleged that the defendants failed to provide adequate training, but provided no information about the trainings, who did or did not receive them, or why they were deficient).

In short, because the Amended Complaint fails to sufficiently allege that Lyft knew or should have known that Brown had dangerous propensities, which either should have prevented Lyft from hiring him or would have required Lyft's supervision or training, Count III is insufficient as a matter of law. *See, e.g.*, *Buttermore v. Loans*, No. 15-1514, 2016 WL 308875, at *3-4 (W.D. Pa. Jan. 25, 2016) (granting motion to dismiss negligent hiring claim, stating that

plaintiffs must "allege facts that would establish that the employer knew or should have known of a reason not to hire the employee" at the time of hiring, and determining that allegations that employer failed to "properly interview" and "properly supervise" its employees were conclusory statements not entitled to the presumption of truth).

> **F.     This Court Should Dismiss Plaintiff's Demand for Punitive Damages Because the Amended Complaint Fails to Plausibly Allege that Lyft's Conduct Was Malicious, Intentional, or Reckless in Order to Plausibly Support Punitive Damages**

"Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison v. Luddy*, 870 A. 2d 766, 770 (Pa. 2005) (citing *Feld*, 485 A.2d at 747). Because the purpose of punitive damages is to punish a tortfeasor for his outrageous conduct and to deter other similar conduct, "[t]he state of mind of the actor is vital. The act, or failure to act, must be intentional, reckless or malicious." *Id*. (quoting *Feld*, 485 A.2d at 748). Courts therefore dismiss demands for punitive damages where – as here – the facts alleged support at most a claim for negligence, but do not rise to the level of outrageous conduct required under Pennsylvania law to warrant punitive damages. *See, e.g.*, *Boring v. Google Inc*., 362 F. App'x 273, 283 (3d Cir. 2010) (affirming grant of motion to dismiss plaintiffs' claim for punitive damages because the complaint "fails to allege conduct that is outrageous or malicious" and "there are no facts suggesting that [defendant] acted maliciously or recklessly or that [defendant] intentionally disregarded the [plaintiffs'] rights"); *Kovalev v. Walmart Inc*., Civ. No. 22-1217, 2022 U.S. Dist. LEXIS 185233, at *17-18 (E.D. Pa. Oct. 11, 2022) ("Here, Plaintiff contends that Walmart was negligent in failing to undertake sufficient precautions to prevent its customers from assaulting other customers while standing in

checkout lines. These facts simply do not support any evil motive or reckless indifference to the rights of others. As such, Plaintiff's demands for punitive damages are dismissed.").

Here, there are simply ***no facts alleged*** that could even possibly support that Lyft's conduct was supposedly "reckless" – let alone "intentional" or "malicious." Instead, Plaintiff's punitive damages demand rests entirely on conclusory and boilerplate allegations that Plaintiff was harmed by "Defendant Lyft's carelessness, negligence, gross negligence, and recklessness." (*See, e.g.*, **Ex. A** ¶ 134.) This Court and others within the Third Circuit routinely dismiss punitive damages demands at the pleadings stage. *See, e.g.*, *Latuska v. Sethuraman*, Civ. No. 3:15-208, 2016 U.S. Dist. LEXIS 99089, at *23 (E.D. Pa. July 29, 2016) (observing that the facts alleged "do not rise to the level of outrageous conduct required under Pennsylvania law to warrant punitive damages. Rather, [plaintiffs'] allegations regarding their request for punitive damages are conclusory statements and not factual averments sufficient to state a plausible claim for relief."); *McCullough v. Peeples*, Civ. No. 3:14-123, 2015 U.S. Dist. LEXIS 27683, at *17 (W.D. Pa. Mar. 5, 2015) (granting motion to dismiss punitive damages demand based on conclusory allegations that defendant's actions "constituted outrageous conduct and demonstrated wanton and reckless indifference to the [plaintiff's] safety" and "evidenced conscious acts of an unreasonable character and demonstrated disregard of a risk."); *Gregg v. Lonestar Transp., LLC*, No. 3:14-cv-44, 2015 U.S. Dist. LEXIS 27680, at *10-11 (W.D. Pa. Mar. 6, 2015) (granting motion to dismiss claim for punitive damages because plaintiff failed to allege facts in support); *Allegrino v. Conway E & S, Inc*., No. 09-cv-1507, 2010 U.S. Dist. LEXIS 106734, at *38-39 (W.D. Pa. Oct. 6, 2010) (dismissing punitive damages demand because it was "pled in a conclusory fashion").

The same is true here. Plaintiff's Amended Complaint does not contain any ***facts*** to plausibly support a claim that Lyft engaged in conduct that was malicious, outrageous, motivated by evil, or performed with reckless indifference to the rights of others. *See Kovalev,* 2022 U.S. Dist. LEXIS 185233, at *17-18. The Amended Complaint is likewise devoid of any ***facts*** indicating that Lyft's state of mind was motivated by ill-will or rose to a level beyond ordinary negligence. As such, Plaintiff's demand for punitive damages against Lyft should be dismissed with prejudice.

## V.   CONCLUSION

Each of Plaintiff's claims against Lyft fails as a matter of law, and thus cannot survive the pleading stage. First, Plaintiff's vicarious liability claim (Count II) fails as a matter of law because Pennsylvania law is clear that Lyft cannot be held vicariously liable for intentional, criminal acts of Brown such as those alleged here. Second, Plaintiff's claim against Lyft for "negligent performance of undertaking to render services" (Count IV) also fails, given that Plaintiff cannot show that Lyft undertook any specific duty to protect Plaintiff from Defendant Brown's alleged criminal acts. Third, Plaintiff's negligent misrepresentation claim (Count VII) constitutes, at most, non-actionable "puffery" under Pennsylvania law because it is based solely on allegations that Lyft generally marketed itself as a safe option for women. Fourth, Plaintiff's claim for negligence and gross negligence (Count I) fails because Plaintiff fails to allege how Lyft's conduct caused the alleged harm to Plaintiff, and because Defendant Brown's alleged criminal conduct constitutes a superseding cause that breaks any purported chain of causation as to Lyft. Fifth, Plaintiff's claim for negligence and gross negligence – hiring, training, and supervision (Count III) is legally insufficient where Plaintiff has not plausibly alleged that Lyft knew or should have known that Brown had dangerous propensities. Finally, Plaintiff's punitive damages demand against Lyft cannot survive the pleading stage because the facts, as pleaded, do

not establish that Lyft's conduct was so outrageous as to clear the high bar of showing that Lyft acted with an "evil motive" or "reckless indifference" as required under Pennsylvania law to support punitive damages.

For the above reasons, Lyft respectfully requests that the Court dismiss Counts I, II, III, IV and VII and the demand for punitive damages of the Amended Complaint, with prejudice, and without leave to amend given that any amendment would be futile under the circumstances.

Dated:  December 1, 2023

HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER

By:  _/s/ Matthew N. Klebanoff_
Ronald P. Schiller
Matthew N. Klebanoff
Cary L. Rice
Marianne E. Bradley
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
rschiller@hangley.com
mklebanoff@hangley.com
crice@hangley.com
mbradley@hangley.com

_Attorneys for Defendant Lyft, Inc._