## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **JANE DOE A.F., a pseudonym**,<br><br>Plaintiff,<br><br>v.<br><br>**LYFT, INC., et al.,**<br><br>Defendants. | **CIVIL ACTION**<br><br>**NO. 23-3990-KSM** |

### MEMORANDUM

**Marston, J.**                                                                         **July 19, 2024**

In the instant action, Plaintiff, who is operating under the pseudonym "Jane Doe A.F." has sued the transportation network company Lyft, Inc. ("Lyft") and its former driver Ntiamoah Brown in connection with an alleged sexual assault committed by Brown.  Lyft has moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 25.)  For the reasons set forth below, the Court will grant Lyft's Motion.

### I.      BACKGROUND[1]

#### A.      The Lyft Platform

Lyft is a rideshare company that connects riders and drivers through its online application in exchange for a fee.  (Doc. No. 17 at ¶¶ 11–12.)  Customers use the Lyft smartphone application to request a ride.  (*Id.* at ¶ 76.)  The Lyft app then communicates with a Lyft driver who picks up the customer and drives them to their destination in exchange for a portion of the fee.  (*Id.* at ¶ 77.)  Individuals seeking to become a driver must file an application through either the Lyft app or its website.  (*Id.* at ¶ 81.)  To qualify, the applicant must have one year of driving

---

[1] The allegations described herein are taken from Plaintiff's Amended Complaint.  (Doc. No. 17.)  The Court assumes their truth for purposes of this motion.

experience, be at least twenty-five years old, receive a DMV background check, and present

proof of insurance, registration, and vehicle inspection.  (*Id.* at ¶ 82.)  Applicants are expected to

self-report their criminal and traffic violation history, as there is no third-party background check

or interview to assist in vetting candidates.  (*Id.* at ¶¶ 87–90.)  Nearly all applicants are approved

to become Lyft drivers.  (*Id.* at ¶ 85.)

Lyft portrays itself as a safe option for women, particularly women of color, looking for a

ride.  (*Id*. at ¶¶ 48, 52.)  The Amended Complaint specifically references three of Lyft's

promotional materials, which appear in the rider safety portion of the company's website.  *See*

*Safety*, Lyft, https://www.lyft.com/safety/rider (last accessed June 6, 2024); (Doc. No. 17 at

¶¶ 48–50).  The first features a smiling young woman, leaning her head out of a car window,

with bold white text overlay reading:  "Safety for all means looking out for riders."  (*Id.* at ¶ 48.)

In smaller text, the advertisement reads:

> Lyft is a community where everyone belongs.  We'll always treat
> you with respect and look out for your safety.  We do this by
> maintaining high standards, which start before your very first ride.
> Our proactive safety measures are always on.  And anytime night or
> day, we offer real help from real humans.

(*Id*.)  The next advertisement referenced by Plaintiff features a group of smiling young women

seemingly about to enter a Lyft ride with the message "High safety standards" displayed above.

(*Id.* at ¶ 49.)  And the final advertisement features a smiling young woman of color seated in

what appears to be the back of a car.  (*Id.* at ¶ 50.)  Plaintiff alleges that she relied on these

messages and assurances of safety when deciding to ride with Lyft.  (*Id.* at ¶¶ 53, 204.)

But despite this outward facing emphasis on rider safety,[2] Lyft faces a serious and growing problem of sexual assaults occurring during its rides. (*Id.* at ¶¶ 93–98, 100.) In 2021, Lyft released a Community Safety Report in which the company reported 1,096 sexual assaults during its rides in 2017, 1,255 sexual assaults in 2018, and 1,807 sexual assaults in 2019, resulting in total of 4,158 reported sexual assaults across that three-year span. (*Id.* at ¶¶ 93, 95.) Plaintiff claims that women of color are the victims of a disproportionate percentage of these incidents. (*Id.* at ¶ 55.) She alleges that, despite knowing of this problem, Lyft has failed to implement the procedures, policies, and tools necessary to curb these assaults, such as installing cameras, utilizing panic buttons, implementing more thorough background checks, and allowing women to connect with female drivers if they wish. (*Id.* at ¶¶ 59, 126–31, 146, 163.)

### B. Brown's Sexual Assault of Plaintiff

On August 12, 2021, at 1:14 a.m., Plaintiff and her friend ordered a ride through the Lyft application and were paired Defendant Brown. (*Id.* at ¶¶ 23, 27.) A few minutes later, at around 1:23 a.m., Brown dropped Plaintiff's friend off at her residence, leaving Plaintiff alone in the backseat of the car. (*Id.* at ¶ 30.) Brown continued towards Plaintiff's destination and began asking extremely inappropriate and harassing questions. (*Id.* at ¶ 31.) Brown then pulled the car over without Plaintiff's consent, exited the driver's seat, and entered the back of the car where Plaintiff was seated. (*Id.* at ¶¶ 32–34.) Brown removed Plaintiff's pants, forced her to perform oral sex on him, and raped her repeatedly. (*Id.* at ¶¶ 34–36.) Terrified and shocked, Plaintiff rolled out of the vehicle and found her way home. (*Id.* at ¶ 37.) Brown yelled that he would "see her tomorrow" and laughed as she escaped the vehicle. (*Id.* at ¶ 38.)

---

[2] In addition to these marketing materials, Lyft's co-founder and former president John Zimmer stated that "[s]afety is fundamental to Lyft. That means creating features and policies to give riders and drivers peace of mind, and being clear about what happens on our platforms." (Doc. No. 17 at ¶ 99.)

Later that same morning, Plaintiff reported the sexual assault to Lyft, initially exchanging messages with a member of the company's safety team via the Lyft app and later speaking with a member of the company's "escalation team" over the phone.  (*Id*. at ¶¶ 39–41.)  Lyft informed Plaintiff that it would conduct an internal investigation into the incident.[3]  (*Id*. at ¶¶ 42–43.)  Plaintiff asserts that as a result of this assault, she has endured and will continue endure "pain and suffering, humiliation, embarrassment, [and] mental anguish."  (*Id.* at ¶ 155.)

### C.    Procedural History

Plaintiff filed this action against Defendants Lyft and Brown in the Court of Common Pleas for Philadelphia County on October 11, 2023.  (Doc. No. 1-1.)  Lyft removed the case to this Court on October 16, 2023, on the grounds that this Court has diversity jurisdiction.  (Doc. No. 1.)  On November 10, 2023, after meeting and conferring with Lyft, Plaintiff filed the operative Amended Complaint.  (Doc. No. 17.)  In her Amended Complaint, Plaintiff asserts claims for negligence, gross negligence, vicarious liability, and negligent performance of undertaking to render services against both Defendants (Counts I–II, IV); negligent misrepresentation and negligent hiring, training, and supervision against Lyft (Counts III, VII); and assault and battery against Brown (Counts V–VI).  She also seeks punitive damages.  (Doc. No. 17 at ¶¶ 74, 165, 215.)  On December 1, 2023, Lyft filed the instant motion to dismiss in which it argues that the Amended Complaint should be dismissed in its entirety and that Plaintiff's request for punitive damages should be stricken.[4]  (Doc. No. 20.)

---

[3] At this stage the Court is confined to the allegations in the Amended Complaint, which does not make clear whether Plaintiff reported the incident to the City of Philadelphia Police Department.

[4] Despite being served with the Amended Complaint (Doc. No. 22), Defendant Brown has not entered an appearance in this litigation.  Plaintiff has already moved for entry of default with the Clerk of Court (Doc. No. 33) which was entered on January 24, 2024 (Doc. No. 34).  The Court understands, however, that Brown was recently deposed in this case.  (Doc. No. 70 at 10 n.3.)

On April 16, 2024, the Court heard oral argument on Lyft's motion.  At the outset of their argument, Lyft's counsel informed the Court that they would be withdrawing their motion to dismiss as to Count I, the negligence and gross negligence claims.  (Apr. 16, 2024 Hr'g Tr. at 3:7–21).  Plaintiff's counsel then reciprocated and informed the Court that Plaintiff would be withdrawing Count II, the vicarious liability claim.  (*Id.* at 21:5–9.)  Plaintiff also informed the Court later in the argument that she would not be pursuing the negligent training or hiring portion of Count III and would instead be proceeding only on the negligent supervision portion of that claim.  (*Id.* at 43:18–24.)  And finally, Plaintiff asked the Court to dismiss her negligent supervision claim and request for punitive damages without prejudice if the Court agreed with Lyft that Plaintiff could not rely on four prior behavioral warnings against Defendant Brown that Plaintiff raised for the first time in her opposition to Lyft's motion and did not include in her Amended Complaint.  (*Id.* at 23:4–17, 38:9–12.)  Thus, following oral argument, the only issues still before the Court are Plaintiff's claims for negligent performance of undertaking to render services, negligent misrepresentation, negligent supervision, and punitive damages, with the viability of these latter two claims hinging on whether the Court will consider the prior behavioral warnings against Brown.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement.'"  *Id.*  Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that

actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (quotation marks omitted).

That said, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Bell Atl. Corp.*, 550 U.S. at 555 (explaining that the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").

## III.    DISCUSSION

As discussed above the only claims remaining against Lyft are Plaintiff's claims for negligent supervision (part of Count III), negligent performance of undertaking to render services (Count IV), and negligent misrepresentation (Count VII), as well as Plaintiff's request for punitive damages.  We address each in turn.

### A.    Negligent Supervision (Count III)

The Court begins with Count III of the Amended Complaint which, after Plaintiff's concessions, asserts only a claim for negligent supervision.[5]  (Apr. 16, 2024 Hr'g Tr. at 43:18–

---

[5] The Court notes that even if Plaintiff had proceeded on her claims of negligent hiring and negligent training, these claims would have been dismissed.  As to the negligent hiring claim, Plaintiff has failed to set forth facts suggesting that Lyft knew or should have known of Brown's dangerous tendencies before enrolling him as a driver.  *See Fusco v. Uber Techs., Inc*., No. CV 17-00036, 2018 WL 3618232, at *4 (E.D. Pa. July 27, 2018) ("To make out a claim for negligent hiring, a plaintiff must show that an employer, *knowing or on notice of an applicant's propensity for misconduct*, nevertheless hired the individual and so exposed the plaintiff to danger." (citing *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39–40 (Pa. Super. Ct. 2000) (emphasis added)).  This is true even if the Court were to consider the belatedly identified behavioral reports, which were necessarily incidents that occurred *after* Brown was hired.  That leaves only Plaintiff's general allegations that Lyft's screening protocols were inadequate.  (Doc. No. 17 at ¶¶ 86, 92, 210.)  But these allegations cannot support a negligent hiring claim because Plaintiff has failed to allege that more thorough screening would have revealed Brown's propensity for violence.  *See, e.g., Fusco*, 2018 WL 3618232, at *5 ("Although Plaintiff alleges that a reasonable employer in Defendant's position would have conducted additional screening before hiring the driver, this allegation does not state a claim for negligent hiring unless it is further alleged that a more

6

24.)  To state claim for negligent supervision, "the plaintiff must show that the employer knew or should have known of a need to supervise the employee, and that, by failing to do so, exposed the plaintiff to the employee's misbehavior."[6]  *Fusco*, 2018 WL 3618232, at *4 (citing *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 697 (Pa. Super. Ct. 2000)).  To make such a showing, a plaintiff must "allege a specific instance of past misconduct" on the part of the employee that "would have put a reasonable employer on notice of the employee's propensity to injure others." *Id.* at *4–5 (citing *Heller v. Patwil Homes*, 713 A.2d 105, 108 (Pa. Super. Ct. 1998)).

Here, in arguing that Lyft knew or should have known that Brown had violent tendencies, Plaintiff points to four prior complaints that passengers lodged against Brown.  (Doc. No. 25 at 7, 10 n.1, 25–26.)  The problem for Plaintiff, however, is that these facts do not appear in the Amended Complaint.  Plaintiff cannot rely on facts that appear for the first time in her opposition to the motion to dismiss to state a claim.[7]  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."); *Fultz v. Am. Fed'n of State, Cnty. & Mun.*

---

[6] thorough screening process would have uncovered signs of violent behavior.").  Thus, Plaintiff's negligent hiring claim would have been futile.  And as to the negligent training claim, Plaintiff has not alleged facts suggesting that Lyft had a duty to train Brown on something as elementary as not sexually assaulting passengers, what additional training should have been required, or that training on something this basic would have prevented Brown's attack of Plaintiff.

[6] Lyft made clear both in their briefing (Doc. No. 20 at 17 n.6) and at oral argument (Apr. 16, 2024 Hr'g Tr. at 4:19–22) that although they reject the notion that Brown was their employee, they assume it to be true for purposes of this motion.  Because this issue is not properly before the Court and Plaintiff's claim fails regardless, the Court will assume the same.

[7] This remains true even if Plaintiff's justification for excluding these reports was a concern regarding their prelitigation confidentiality agreement with Lyft.  Rather than relying on the opposition brief to present these facts for the first time, Plaintiff should have worked with Lyft regarding how to use this information and requested that the Amended Complaint be filed in redacted form if necessary.

*Emps., Council 13*, 549 F. Supp. 3d 379, 388–89 (M.D. Pa. 2021) ("Plaintiffs raise these arguments for the first time in their opposition brief, and it thus not appropriate for us to consider any new factual allegations they raise in support thereof now."); *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 520 (E.D. Pa. 2006) (refusing to consider the plaintiff's argument because "the first time Plaintiff raised this alternate argument was in response to [defendant's] motion to dismiss . . . [and] the Amended Complaint is completely devoid of the factual allegations necessary" to establish the claim).[8]   Thus, the Court must disregard these four prior behavioral warnings and focus our analysis only on the facts presented in the Amended Complaint.

As Plaintiff's counsel conceded at argument (Apr. 16, 2024 Hr'g at 23:4–17), without the Court's consideration of these prior behavioral reports, Plaintiff's claim for negligent supervision cannot survive.  The Amended Complaint fails to allege past misconduct on the part of Brown and does not otherwise allege facts suggesting that Lyft knew or should have known that Brown had violent tendencies.  The Court therefore grants Lyft's motion as to the negligent supervision claim.  However, because this claim suffers from underinclusive pleading, the Court will dismiss without prejudice and permit Plaintiff leave to file a second amended complaint.

### B.      Negligent Undertaking (Count IV)

The Court turns next to Plaintiff's negligent undertaking claim.  In determining the contours of a negligent undertaking claim, Pennsylvania Courts rely on § 323 of the Second Restatement of Torts.  *See Feld v. Merriam*, 485 A.2d 742, 746 (Pa. 1984); *Morena v. S. Hills*

---

[8] Even if the Court were to overlook that these facts were not included in the Amended Complaint, Plaintiff provides no explanation as to what these prior complaints consist or how they could provide a basis for finding that Lyft knew Brown had a propensity to injure others.  Thus, even if the Court were to consider these complaints, Plaintiff's negligent supervision claim would still fail.

*Health Sys.*, 462 A.2d 680, 684 (Pa. 1983). *See generally James v. Duquesne Univ.*, 936 F. Supp. 2d 618, 634–39 (W.D. Pa. 2013) (providing a detailed overview of Pennsylvania caselaw applying § 323). Section 323 provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm,
> >
> > or
> >
> > (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts, § 323; *see also Charney v. Reitz*, No. 1573 MDA 2017, 2018 WL 1886316, at *2 (Pa. Super. Ct. Apr. 20, 2018) ("[I]f someone voluntarily undertakes to render services to another for their protection, that person is liable for negligence in performing the duty that it voluntarily assumed."). This provision is commonly referred to as the "Good Samaritan exception" because it evades the "general rule that there is no duty to protect against harm by third parties." *Humphries v. Pa. State Univ.*, No. 4:20-CV-00064, 2021 WL 4355352, at *8 (M.D. Pa. Sept. 24, 2021).

While, as noted above, Pennsylvania courts have held that § 323 is an accurate statement of law in the Commonwealth, their approach under this provision is "restrictive." *Jean v. Bucknell Univ.*, 534 F. Supp. 3d 404, 414 (M.D. Pa. 2021). For example, Pennsylvania courts have held that promisees "may not expect more than is offered," and "may only recover from a party who negligently performs a promise, not one who makes a promise that is wholly inadequate." *Id.* Relatedly, a party will be found liable under § 323 only when they have

engaged in a "specific undertaking" necessary for one's protection; general promises are not enough. *Id.* at 414–15.

Here, the Court finds that Plaintiff's negligent undertaking claim fails for two independent reasons. First, Plaintiff has failed to allege that Lyft undertook to protect her from Brown. Plaintiff's allegations on this front are threadbare and difficult to follow;[9] however, Plaintiff appears to claim that by providing transportation services to Plaintiff, Lyft undertook a duty to protect her from her driver. (*See* Doc. No. 17 at ¶¶ 47, 78, 167 (asserting that Lyft had a duty to provide "safe" transportation services); *id.* at ¶¶ 47, 132, 168 (asserting that Lyft assumed a duty to keep its customers safe, and that Lyft should have known of a need to protect Plaintiff from Brown); *see also* Doc. No. 25 at 19–20.) But Plaintiff fails to connect these dots and explain how Lyft, by providing transportation services, also assumed the duty to protect Plaintiff from Brown. At most, Plaintiff asserts that Lyft assumed this duty by guaranteeing a "safe" ride through its marketing materials.[10] (Doc. No. 25 at 19–21.) But, as noted above, § 323 requires a

---

[9] Indeed, under this particular count, Plaintiff alleges only that Lyft "undertook, for consideration, the provision of Commercial transportation services" and that Lyft "should have recognized that Plaintiff, Jane Doe A.F., needed to be protected from Defendant Brown." (Doc. No. 17 at ¶¶ 167–68.) This appears to blend two potential undertakings, the provision of transportation services and the protection of Plaintiff from Brown.

[10] Plaintiff also appears to rely on her assertion that Lyft is a common carrier, and thus owed Plaintiff the highest duty of care. (Doc. No. 25 at 18–19.) However, the Pennsylvania legislature has recently made clear that Lyft is not a common carrier for purposes of liability. In Act 164 of 2016, the Pennsylvania legislature modified the Commonwealth's General Local Government Code, Public Utility Code, and Vehicle Code to account for "transportation network companies," such as Lyft. As is relevant for our purposes, this Act both removed transportation network companies from the definition of a "common carrier" under the Public Utility Code, 66 Pa. Cons. Stat. § 102, and added the following provision: "Except as otherwise provided under this chapter, the following laws and regulations of this Commonwealth may not apply to a transportation network company or transportation network company driver . . . . Laws and regulations imposing a greater standard of care on motor carriers than that imposed on other drivers or owners of motor vehicles," 66 Pa. Cons. Stat. § 2603(b)(4). Plaintiff's argument that Lyft is a common carrier and thus had a duty to protect Plaintiff is thus directly at odds with the Pennsylvania legislature's directive that companies such as Lyft should not be held to any sort of heightened duty of care.

"specific undertaking" and courts have routinely found that generalized promises of safety are insufficient to create a duty under § 323.  *See Humphries*, 2021 WL 4355352, at *10 (finding no duty under § 323 and noting that "[s]ection 323 requires a specific undertaking.  The policies that Humphries invokes—read generously—only provide a general promise of protection"); *Jean*, 534 F. Supp. 3d at 414–15 ("[C]ourts have found parties liable under section 323 only where they have engaged in a specific undertaking, as opposed to a general promise.  For example, a landlord's offer to replace a broken lock constitutes a specific undertaking but a general promise to provide security on the premises does not."); *Martin v. Norfolk S. Ry. Co.*, No. 4:15-CV-02034, 2021 WL 1123007, at *9 (M.D. Pa. Mar. 24, 2021) ("Norfolk Southern's policies are much more similar to 'aspirational statements' rather than legally binding proclamations. . . . [S]uch language cannot, by itself, establish an assumption of a legal duty.").  Because Plaintiff has failed to point to a specific undertaking on Lyft's part suggesting that they assumed the duty to protect Plaintiff from Brown, her negligent undertaking claim fails.  *See Hill, Sr. v. Slippery Rock Univ.*, No. 201410570, 2014 WL 11318528, at *7 (Pa. Com. Pl. Dec. 22, 2014) ("A foundational requirement of []§ 323 . . . is that, in order for liability to be imposed upon the actor, he must specifically have undertaken to perform the task that he is charged with having performed negligently, because without the actual assumption of the undertaking, there can be no correlative legal duty to perform that undertaking carefully." (citing *Blewitt v. Man Roland, Inc.*, 168 F. Supp. 2d 466, 469–70 (E.D. Pa. 2001)).

Second, even assuming that Lyft undertook a duty to protect Plaintiff, she has failed to state a claim for negligent undertaking because she asserts only that Lyft should have provided additional safety features on its platform, not that it implemented its existing security scheme negligently.  As noted above, Pennsylvania courts have repeatedly held that a plaintiff "may not

11

expect more than is offered." *Jean*, 534 F. Supp. 3d at 414.  This means that under § 323, a plaintiff "may rely upon a program of protection only within the reasonable expectations of the program that the person has voluntarily provided," *Newell v. Montana W., Inc.*, 154 A.3d 819, 838 (Pa. Super. Ct. 2017) (internal citations and quotation marks omitted), and a defendant is only burdened with the "obligations actually undertaken," not "additional obligations beyond those that the defendant contemplated," *AT & T Corp. v. CPB Int'l, Inc.*, No. 4:CV-05-0424, 2007 WL 1811213, at *15 (M.D. Pa. June 22, 2007).  The Pennsylvania Supreme Court explained this principle most clearly in *Feld* with the following example:

> A tenant may not expect more than is offered.  If, for instance, one guard is offered, he cannot expect the same quality and type of protection that two guards would have provided, nor may he expect the benefits that a different program might have provided.  He can only expect the benefits reasonably expected of the program as offered and that that program will be conducted with reasonable care.

506 Pa. at 394; *see also James*, 936 F. Supp. 2d at 644 ("[Plaintiff seeks] to predicate a breach of duty on the theory that what was provided was inadequate and could have been better administered or more effectively deployed.  *Feld* and its progeny consistently hold that such a showing does not breach a duty that is recognized under Pennsylvania law."); *Kerns v. Methodist Hosp.*, 574 A.2d 1068, 1077–78 (Pa. Super. Ct. 1990) (dismissing claim under § 323 where a pizza delivery man was robbed and physically assaulted on hospital property because the plaintiff argued only that the security implemented was inadequate and did not demonstrate "negligence within the limited parameters of the security program actually in place"); *Pearson v. Phila. Eagles, LLC*, 220 A.3d 1154, 1165 (Pa. Super. Ct. 2019) ("[A]t best, Pearson can argue that Appellants should have had in place a different security program or additional security personnel available on the night of Pearson's injury.  Such an argument, however, is not a basis

for a finding of negligence under *Feld*."); *Reider v. Martin*, 519 A.2d 507, 511 (Pa. Super. Ct. 1987) (noting that tenants who relied on a landlord's promise to provide the additional protection of a locked exterior door "could only expect the same quality and type of protection that the second locked door would have provided and nothing more"); *Garlick v. Anadarko Petroleum Corp.*, No. 4:12-CV-01166, 2017 WL 3485738, at *7 (M.D. Pa. Aug. 15, 2017) (dismissing § 323 claim where the plaintiff truck driver who perished in a crash alleged that the defendant, who provided suggested routes around its property to the plaintiff, failed to implement additional safety measures and holding that "a driver could not rely upon precautionary measures that [the defendant] never undertook to install").

Extending this principle, which arises most often in the context of landowner liability, to the case at bar, Lyft can only be held liable under § 323 for failing to reasonably implement its existing security measures. However, the crux of Plaintiff's claim is that Lyft was negligent for failing to utilize *additional* measures to protect her such as installing cameras, permitting female riders to receive rides only from female drivers, allowing passengers to see comments about their impending driver from past riders, and installing a panic button.[11]  (*See, e.g.*, Doc. No. 17 at ¶¶ 5, 86–92, 105–06, 109, 125–31, 146, 163; *see also* Doc. No. 25 at 20–21 (Plaintiff asserting in connection with her negligent undertaking claim that "[i]f Lyft required" drivers to install "video surveillance in [their] vehicle[s]," it  "would protect riders and drivers and deter sexual assault, [and] Plaintiff who was heavily intoxicated at the time of this incident would have been better protected").)  These allegations are incompatible with a negligent undertaking claim and are

---

[11] In connection with her negligence and gross negligence claims,  Plaintiff asserts around 45 allegations of negligence including that Lyft failed "to enforce policies which were enacted to prevent sexual abuse and sexual assault of customers."  (Doc. No. 17 at ¶ 163(mm).)  But given that this allegation is both ambiguous and made in connection with a different claim, it cannot support Plaintiff's claim for negligent undertaking.

better addressed through Plaintiff's surviving claims of negligence and gross negligence.  Thus, Plaintiff's claim for negligent undertaking fails as currently pled.

In sum, Plaintiff has failed to allege that Lyft undertook to protect her and has pled and argued this cause of action in a manner inconsistent with Pennsylvania's admonishment that recipients of an undertaking cannot expect more than what is offered.  The Court therefore dismisses Plaintiff's negligent undertaking claim.[12]  However, because these issues could be cured through more articulate pleading, the Court will dismiss this claim without prejudice and provide Plaintiff leave to amend if she can state a claim for negligent undertaking consistent with the analysis set forth above.[13]

### C.      Negligent Misrepresentation (Count VII)

The Court next addresses Plaintiff's claim for negligent misrepresentation, which in broad terms alleges that Lyft falsely advertised itself as a safe rideshare option, particularly for women of color.  (Doc. No. 17 at ¶¶ 200–02.)  To state a claim for negligent misrepresentation under Pennsylvania law, a plaintiff must allege (1) a misrepresentation of material fact; (2) the representor either knew of the misrepresentation, made the misrepresentation without knowledge as to its truth or falsity, or made the representation under circumstances in which he ought to have known of its falsity; (3) the representor intended the representation to induce another to act

---

[12] The Court notes that the Court of Common Pleas for Philadelphia County recently addressed an identically pled cause of action for negligent undertaking against Lyft.  *See Doe C.Q. v. Lyft, Inc.*, No. 220501534 (Pa. Com. Pl. July 18, 2022).  The court in that matter dismissed the plaintiff's claim without writing.  (*See* Doc. No. 20-3.)

[13] The Court also understands from a recent telephone conference with the parties (Doc. No. 69) and Plaintiff's motion to compel (Doc. No. 70) that Plaintiff no longer believes that Brown was Plaintiff's driver.  Given this shift in the case, the Court finds that the most prudent way forward is to dismiss this claim without prejudice such that Plaintiff can reassert her claim in light of these newly discovered facts.

on it; and (4) the misrepresentation resulted in injury to the party acting in justifiable reliance on the misrepresentation. *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994).

Consideration of the first prong, misrepresentation of a material fact, requires the Court to delineate between actionable statements of fact and unactionable "puffery." *Fusco*, 2018 WL 3618232, at *5–6. A statement is actionable if it is quantifiable and measurable against a specific standard. *See id.* at *6 ("[I]n order for a statement of quality to be actionable, it must contain a standard—either through absolute words or a measurable comparison—against which the statement may be tested and thus falsified."). For example, a statement regarding the quality of a product if framed in absolute terms is actionable because such statements "convey the message that a product never deviates from the asserted standard." *Id.* ("[A] claim of absolute safety can be proved true or false by evaluating whether the product can in fact harm the user."). On the other hand, "exaggeration or overstatement expressed in broad, vague, and commendatory language," *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993), and "general words of superiority like 'good,' 'superb,' and 'top-notch'" which convey only "the seller's opinion that its product is superior," constitute puffery and are not actionable, *Fusco*, 2018 WL 3618232, at *6. For example, an assertion that a product is generally "safe" is typically considered puffery because it conveys only the seller's judgement as to the risk of their product. *Id.* Thus, at bottom, the Court must determine whether the statements at issue are "specific and measurable" and therefore, actionable, or are "exaggerated advertising, blustering, and boasting or vague and general claims of superiority," and therefore, not actionable. *Rohrbach v. NVR, Inc.*, No. CV 19-5847, 2024 WL 1390896, at *6 (E.D. Pa. Mar. 29, 2024).

The Court understands Plaintiff to be challenging the following assertions from Lyft's advertisements:[14]

- "High safety standards," appearing above an image of three women walking toward their Lyft ride.  (Doc. No. 17 at ¶ 49.)

- "We'll always treat you with respect and look out for your safety. We do this by maintaining high standards which start before your first ride."  (*Id*. at ¶ 48)

- "Safety for all means looking out for our riders," depicted next to a woman of color.  (*Id.*)

- "Our proactive safety measures are always on."  (*Id.*)

- "[A]ny time day or night, we offer real help from real humans." (*Id.*)

As an initial matter, many of these statements constitute puffery and therefore cannot support a claim for negligent misrepresentation.  First, Lyft's promise of "High Safety Standards"[15] and its assertion that it maintains "high standards" beginning with riders' first ride, are the type of boastful and generalized statements of superior quality that are routinely found to constitute puffery.  *See Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 351 (E.D. Pa. 2022) (finding that

---

[14] Plaintiff also included the following quote from Lyft's co-founder and former president in her Amended Complaint:  "[s]afety is fundamental to Lyft.  That means creating features and policies to give riders and drivers peace of mind, and being clear about what happens on our platforms."  (Doc. No. 17 at ¶ 99.)  The Court does not understand Plaintiff to be relying on this statement with respect to her negligent misrepresentation claim.  However, to the extent she in fact intended to state a claim premised on this statement, the Court finds that it is unactionable puffery because it contains only aspirational statements on the part of Lyft.

[15] Plaintiff inconsistently characterizes this statement throughout her Amended Complaint, stating that Lyft promised the "High*est* Safety Standards" (Doc. No. 17 at ¶ 49) and that Lyft claims to have "High*er* Safety Standards" (*id.* at ¶ 201).  While these statements would be actionable because the first is written as an absolute statement of the quality of their services and the second suggests that their safety features are superior to their competitors, *see Fusco*, 2018 WL 3618232, at *8; *Castrol Inc. Co.*, 987 F.2d at 945, neither appears in Lyft's advertisement, which is depicted in the Amended Complaint (*id.* at ¶ 48).  Instead, as Plaintiff's counsel acknowledged at oral argument (Apr. 16, 2024 Hr'g Tr. at 28:15–29:2), the advertisement in fact reads that Lyft has "High Safety Standards," which, as a general claim of superiority that cannot be reasonably tested, is not actionable.

16

claims that the product was "New & Improved" and "High Quality" constituted puffery); *Fusco*, 2018 WL 3618232, at *7 (finding that Uber's claims that its services were "safe" and "reliable" and that Uber drivers would provide "safe passage" were puffery because they were "general terms of quality," and "not falsifiable"). These phrases were not in "absolute terms," were not made "in comparison to other products," and do not contain sufficient detail such that they could be measured or tested.[16] *Kovalev*, 647 F. Supp. 3d at 351; *see also Fusco*, 2018 WL 3618232, at *7 ("While the likelihood of injury is quantifiable, the level at which it becomes 'unsafe' is subjective."). Instead, these statements reflect Lyft's subjective view of their safety standards and cannot support a negligent misrepresentation claim.

The same rings true for Lyft's promise of "safety for all" and its statement that it will always "treat [riders] with respect and look out for their safety." (Doc. No. 17 at ¶ 48.) These statements, which represent Lyft's goals and aspirations for the safety of their product, are incapable of being measured or quantifiably tested and therefore constitute unactionable puffery. *See Uber Techs., Inc.*, 551 F. Supp. 3d at 368 ("The language that Uber is 'committed' to connecting consumers to the 'safest ride on the road' is aspirational puffery."). Plaintiff's claim in relation to these statements is therefore dismissed with prejudice.[17]

---

[16] The fact that these statements are not in absolute terms differentiates the case at bar from the cases on which Plaintiff relies (Doc. No. 25 at 21–22) in which Uber asserted that it had "the strictest safety standards," *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) and offered "the safest rides on the road," *Uber Techs., Inc.*, 551 F. Supp. 3d at 367–68.

[17] The Court acknowledges that "the determination as to whether a statement is deemed puffery is a question of fact to be resolved by the finder of fact except in the unusual case where the answer is so clear that it may be decided as a matter of law." *Williams v. Amazon, Inc.*, 573 F. Supp. 3d 971, 975 (E.D. Pa. 2021) (quoting *Commonwealth ex rel. Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010 (Pa. 2018)). Here, the Court finds that the statements discussed above present such clear instances of puffery that it is appropriate to resolve these issues at the motion to dismiss stage. *See Fusco*, 2018 WL 3618232, at *6–7 (dismissing portions of a negligent misrepresentation claim against Uber at the motion to dismiss stage because the statements at issue were largely puffery).

In contrast, Lyft's claims that its "protective safety features are always on" and that it offers "real help from real humans" any time day or night are specific, quantifiable, and verifiable.  Thus, these statements are actionable.  However, Plaintiff has nevertheless failed to state a claim for negligent misrepresentation with respect to these statements because she has not alleged sufficient, non-conclusory facts demonstrating that they are false.[18]  As to Lyft's claim that its protective safety features are always on, although Plaintiff has alleged that Lyft could have and should have implemented *additional* safety measures (*see, e.g.*, *id.* at ¶¶ 146, 163), she has not alleged that Lyft entirely lacks proactive safety measures or that the safety measures they do offer were inactive at the time of her assault.[19]  And as to Lyft's statement that it offers "real help from real humans," Plaintiff's assertion that this statement is false is belied by her own allegations in the Amended Complaint in which she acknowledges that in the early hours of August 12, 2021, she was connected with Lyft safety workers through a messaging feature on the Lyft application and spoke with members of the Lyft team on the phone about her assault.  (Doc. No. 17 at ¶¶ 39–43.)  Since Plaintiff has not pled facts suggesting that these statements are false, they cannot support a claim for negligent misrepresentation.  *See Fusco*, 2018 WL 3618232, at *7 ("The Complaint does not allege that it was inaccurate for Defendant to say that it had a 'system of pre-screenings of drivers,' that it 'use[d] technology' for safety, that it checked

---

[18] While Plaintiff asserts in conclusory fashion that these statements are false (*see, e.g.*, Doc. No. 17 at ¶ 51), the Court need not credit this allegation, especially considering that this assertion is undercut by other specific allegations in the complaint.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789–90 (3d Cir. 2016) (providing that as part of motion to dismiss analysis, the Court must "identify those allegations that, being merely conclusory, are not entitled to the presumption or truth," and "affirmatively disregard[] a pleading's legal conclusions").

[19] To the contrary, Plaintiff's counsel at oral argument described at least one proactive safety measure that was implemented during Plaintiff's ride.  (Apr. 16, 2024 Hr'g Tr. at 35:7–16.)  He informed the Court that when Brown pulled the car over, thus diverting Plaintiff from her pre-set route, Lyft sent a notification to Plaintiff inquiring whether she needed assistance.  (*Id.*)

'county, federal and multi-state' records, or that it 'review[ed] . . . motor vehicle records' of its existing drivers.  These representations are not puffery, because they describe specific aspects of Defendant's screening process that could be tested.  However, because Plaintiff does not allege that these statements were false, they cannot constitute actionable misrepresentations.").  Here, because, as Plaintiff's counsel suggested at oral argument (Apr. 16, 2024 Hr'g Tr. at 36:20–25), the ongoing discovery in this matter could prove that these statements are false, the Court will dismiss Plaintiff's claim as to these two statements without prejudice.

* * *

Because most of the statements Plaintiff challenges are unactionable puffery and she has not alleged facts indicating that the actionable statements are false, she has failed to state a claim for negligent misrepresentation.  Accordingly, Plaintiff's claim for negligent misrepresentation is dismissed in part with and in part without prejudice.

### D.    Punitive Damages

Finally, the Court turns to whether Plaintiff's request for punitive damages should be stricken.  Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  *Hutchison v. Luddy*, 870 A. 2d 766, 770 (Pa. 2005) (quoting *Feld*, 485 A.2d at 747).  Punitive damages may be stricken at the motion to dismiss stage, as Lyft requests, but only where there is "no foundation in the complaint for a demand for punitive damages."  *Boring v. Google Inc.*, 362 F. App'x 273, 283 (3d Cir. 2010).  To survive such scrutiny, allegations need not "'conclusively establish recklessness'; rather, 'the court's obligation is merely to determine whether they create a plausible inference of recklessness, one which discovery will further substantiate.'"  *White v. Bush*, No. CV 20-2059-KSM, 2021 WL 2255981, at *6 (E.D. Pa. June 3,

2021) (quoting *Gula v. Advanced Cargo Transp., Inc.*, Civil No. 3:13-cv-226, 2013 WL 1899900, at *3 (M.D. May 7, 2013)).

Here, Plaintiff conceded at oral argument that if the Court is unable to consider the four prior behavioral warnings against Brown, which are the primary basis for her punitive damages request, (Doc. No. 25 at 26–27), then her request for punitive damages should be dismissed without prejudice.  (Apr. 16, 2024 Hr'g Tr. at 38:9–12.)  The Court agrees.  As previously discussed, the Court is unable to consider these past behavioral reports because they appeared for the first time in Plaintiff's opposition to Lyft's motion to dismiss.  *See supra* at Section III.A.  And without any non-conclusory allegations that Lyft knew or should have known that Brown had violent or dangerous tendencies prior to assigning him to Plaintiff's ride, the Court fails to see a basis for plausibly finding that Lyft fostered any evil motive or demonstrated a reckless indifference to Plaintiff's rights.  The Court therefore dismisses Plaintiff's request for punitive damages.  *See Kovalev v. Walmart Inc.*, No. CV 22-1217, 2022 WL 6775714, at *7 (E.D. Pa. Oct. 11, 2022) (dismissing claim for punitive damages at the motion to dismiss stage where the plaintiff contended "that Walmart was negligent in failing to undertake sufficient precautions to prevent its customers from assaulting other customers while standing in checkout lines" and reasoning that the facts alleged "simply do not support any evil motive or reckless indifference to the rights of others").  However, given that Plaintiff has additional facts to add to her complaint on this front, the Court will dismiss this portion of the Amended Complaint without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Lyft's motion to dismiss is granted, and Plaintiff's claims for negligent supervision, negligent undertaking, and negligent misrepresentation are dismissed. Plaintiff will be permitted to file a second amended complaint as to the claims dismissed without

prejudice, to the extent she can do so consistent with the Court's analysis in this Memorandum.

An appropriate order follows.