IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE A.F.**, <br><br> Plaintiff, <br><br> v. <br><br> **LYFT, INC.**, <br><br> Defendant. | **CIVIL ACTION** <br><br> **NO. 23-3990-KSM** |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                                                                                           **October 9, 2024**

Defendant Lyft has filed a renewed motion for leave to file under seal its opposition to Plaintiff Jane Doe's motion to compel. (Doc. No. 83). As explained below, Lyft's motion to seal is granted in part and denied in part.

**I.     Background**

On June 26, 2024, Plaintiff filed a motion to compel, arguing that Lyft needed to produce certain documents in response to her first and second sets of requests for production. (Doc. No. 70.) Per the Court's Protective Order entered on January 30, 2024, (Doc. No. 35), Plaintiff filed her brief in support of her motion to compel on the public docket with redactions. (Doc. No. 67-1.) She then filed an unredacted version of her brief and exhibits under seal, (Doc. No. 70), and sought leave to keep that filing under seal. (Doc. No. 67.) The Court held a telephone conference on June 27, 2024, in which it granted Plaintiff's motion to compel, in part, and ordered Lyft to file a written response to the remaining discovery issues. (Doc. Nos. 71–72.)

Lyft filed its response to Plaintiff's motion on July 15, 2024. (Doc. Nos. 73–74.) Like Plaintiff, it filed a redacted version of its briefs and exhibits on the public docket, (Doc. No. 73),

and an unredacted version under seal.  (Doc. No. 74.)  It too sought leave to file its opposition brief and attachments under seal.  (Doc. No. 73.)  Four days later, the Court denied, without prejudice, both Lyft's and Plaintiff's request to seal their briefs and exhibits relating to the motion to compel.  (Doc. No. 79.)  The Court found that "[n]either party has … demonstrated that a sealing order is warranted under the standard outlined by the Third Circuit in *In re Avandia Marketing, Sales Practices & Products Liability Litigation*, 924 F.3d 662 (3d Cir. 2019)."  (Doc. No. 79 at 1.)  But the Court gave both parties until July 26, 2024, to file renewed motions to seal.  (*Id.*)  Lyft filed its renewed motion on that day, seeking to seal and redact exhibits and portions of both parties' briefs relating to the Plaintiff's motion to compel.  (Doc. No. 83.)

**II.     Legal Standard**

Before turning to the substance of Lyft's requests, the Court must first decide the appropriate standard of review to use when evaluating Lyft's motion.  "[W]hen considering various challenges to the confidentiality of documents," three different bodies of law may apply.  *In re Avandia*, 924 F.3d at 670.  These bodies of law include: (1) the First Amendment right to access; (2) the common law right of access; and (3) protective orders under Federal Rule of Civil Procedure 26.  *Id.*  Each uses a different standard of review.

The First Amendment right to access uses the most stringent standard of review.  *See In re Cendant Corp.*, 260 F.3d 183, 198 n.13 (3d Cir. 2001) ("The First Amendment right of access requires a much higher showing than the common law right to access before a judicial proceeding can be sealed.").  "[T]he public and press have a First Amendment right of access to civil trials."  *In re Avandia*, 924 F.3d at 673.  "That right of access can include documents involved in the proceedings."  *N.J. Media Grp. Inc. v. United States*, 836 F.3d 421, 429 (3d Cir. 2016).  In this circuit, courts use a two-prong test to decide whether the First Amendment right

of access attaches: "(1) the experience prong asks 'whether the place and process have historically been open to the press'; and (2) the logic prong evaluates 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *In re Avandia*, 924 F.3d at 673 (quoting *N.J. Media Grp.*, 836 F.3d at 429). For the First Amendment right of access to attach, both prongs must be met. *Id.*

Here, Lyft argues that neither prong is met. (Doc No. 83 at 11.) Under the experience prong, it contends that "[t]ypically, civil discovery process is not open to the press or public . . . ." (*Id.*) And under the logic prong, it asserts that public access would not play a significant positive role in the functioning of civil discovery because the public is not involved in it. *Id.* The Court agrees. For the experience prong, the Supreme Court has acknowledged that "[d]iscovery rarely takes place in public." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 n. 19 (1984). Indeed, pretrial proceedings "were not open to the public at common law . . . and, in general, they are conducted in private as a matter of modern practice." *Id.* at 33. Because civil discovery has historically not been open to the public, the experience prong is not met here.

But even if it were, the First Amendment right to access would still not attach because the logic prong is not met either. Given the historical and modern practice of civil discovery being done in private, it is difficult to conceive how public access would play a significant positive role in its functioning. "Indeed, if [public] access were to be mandated, the civil discovery process might actually be made more complicated and burdensome than it already is." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 12 (1st Cir. 1986). Plus, the Third Circuit has warned that "we do not know what the effect would be on the discovery process itself of holding such discovery presumptively accessible." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 164 (3d Cir. 1993). This unknown effect assures the Court that public access does not play a

3

significant positive role in civil discovery, and thus, the logic prong is not met. Because neither prong is met, the First Amendment right to access does not attach to the materials at issue here.

The next possible standard of review comes from the common law right of access. This standard begins with a presumption "that the public has a right of access to judicial materials." *In re Avandia*, 924 F.3d at 672. Whether the public right of access applies turns on whether the material to be sealed is considered a judicial record. *In re Cendant Corp.*, 260 F.3d at 192. A judicial record is a document that "has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *Id.* Undoubtedly, "there is a presumptive right of public access to pretrial motions of a *nondiscovery* nature, whether preliminary or dispositive, and the material filed in connection therewith." *Leucadia*, 998 F.2d at 164 (emphasis added).

At first glance, the materials that Lyft seeks to seal appear to be judicial records because they have been filed with the Court. But the Court finds that the common law right of access does not apply because these materials relate to Plaintiff's discovery motion. In *Leucadia*, the Third Circuit held "that the common law [right] of presumptive access to documents filed in court does not extend to material filed with discovery motions . . . ." 998 F.2d at 165. The Court gave three reasons for its holding:

> First, the Third Circuit noted our Supreme Court's caution in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) that "pretrial deposition and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law and, in general, they are conducted in private as a matter of modern practice." *Id.* Second, the Court reasoned, "a holding that discovery motions and supporting materials are subject to a presumptive right of access would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands." *Leucadia*, 998 F.2d at 164. Third, the Third Circuit found such a

> broad presumption unnecessary "when there is in existence a source of law for the normative rules governing public access to discovery materials, that is Rules 5(d) and 26(c) of the Federal Rules of Civil Procedure." *Leucadia*, 998 F.2d at 165.

*Dobson v. Milton Hershey Sch.*, 434 F. Supp. 3d 224, 234–35 (M.D. Pa. 2020).

Here, Lyft moves to seal documents that are filed with, and in opposition to, Plaintiff's motion to compel. So, the Court finds that the common law right of public access does not apply to the documents at issue in Lyft's motion. *See id.* (applying *Leucadia* and concluding that the documents were not subject to the common law right of access because they were attached to a discovery motion); *W. Penn Allegheny Health Sys., Inc. v. UPMC*, No. 2:12-cv-0692, 2013 WL 12142658, at *5 (W.D. Pa. Sept. 16, 2013) (finding no common law right of public access to discovery materials).

Because neither the First Amendment right of access nor the common law right of access applies to the materials here, the Court must evaluate Lyft's motion under Federal Rule of Civil Procedure 26. Under that rule, a "party seeking a protective order over discovery material must demonstrate that good cause exists for the order." *In re Avandia*, 924 F.3d at 671. "Good cause means that disclosure will work a clearly defined and serious injury to the party seeking closure," and the injury "must be shown with specificity." *Id*. In determining whether good cause exists, the court considers the following factors from *Pansy v. Borough of Stroudsburg*: (1) whether the disclosure will violate any private interests; (2) whether disclosure of the information will cause a party embarrassment; (3) whether the information is being sought for a legitimate purpose or for an improper purpose; (4) whether the sharing of information among the litigants will promote fairness and efficiency; (5) whether confidentiality is being sought over information important to public health and safety; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Id.* at

5

671–72 (citing *Pansy*, 23 F.3d 772, 786–91 (3d Cir. 1994)).  With this standard in mind, the Court will evaluate each document that Lyft seeks to seal or redact.

### III. Analysis

In its motion, Lyft seeks to redact portions of Plaintiff's motion to compel and attached exhibits (Doc. No. 70), Plaintiff's publicly filed motion-to-compel brief (Doc. No 67-1)[1], and Lyft's opposition to Plaintiff's motion to compel (Doc. No. 83).  Per the Court's Order denying its initial motion to seal, Lyft identifies eight categories of information that it seeks to protect. (*Id.* at 5–6.)  Lyft also provides pinpoint citations to sections of documents that it seeks to redact or seal.  For ease of the analysis, the Court will address each category under the *Pansy* factors.[2]

### A. Category 1: Lyft's Process for Addressing Safety Complaints

First, Lyft looks to seal documents that would disclose its process for addressing safety complaints on its platform.  (Doc. No. 83 at 10.)  Exhibits 3 and 4 to Plaintiff's motion to compel give a behind-the-scenes look at Lyft's internal system for addressing safety complaints on its platform.  (Doc. No. 70 at 61–71.)  Lyft argues that sealing is warranted because this information is not available to the public and would cause significant competitive harm if released.  (Doc. No. 83 at 10.)  The Court agrees that public disclosure of Lyft's internal procedures for handling safety complaints would violate its privacy interest and could cause competitive harm.  *See Sprinturf, Inc. v. Sw. Recreational Indus., Inc.*, 216 F.R.D. 320, 324 (E.D. Pa. 2003) (concluding

---

[1] Plaintiff filed a redacted version of her brief on the public docket on June 26, 2024.  (*See* Doc. No. 67-1.)  Lyft argues that the Plaintiff's redactions were insufficient and violated the Protective Order, (Doc. No. 35), entered in this case.  (Doc. No. 83 at 6 n.2.)  Because Lyft has identified specific information that it believes should be protected, the Court takes a fresh look at whether good cause exists for Lyft's proposed redactions of this information.  *Cf. Pansy*, 23 F.3d at 784 ("It is well-established that a district court retains the power to modify or lift confidentiality orders that it has entered.")

[2] To avoid redundancy, however, the Court will incorporate any overlapping analysis of proposed redactions when they present identical concerns and produce the same result under the private and public interest factors.

that the defendants demonstrated the requisite "good cause" to protect "confidential and sensitive" business information, including the defendants' proprietary information regarding the development of a product line, and explaining that the defendants showed that the release of such information "could result in competitive disadvantage").

Plus, its procedures for addressing safety complaints on its platforms are key to this litigation, suggesting that production of these documents will promote fairness and efficiency during discovery.  And while Lyft is a publicly traded company, it is not a public official or entity as the term was used in *Pansy*.  Although the Court finds that this case, which alleges certain shortcomings and failures of one of the most popular rideshare applications, involves issues important to the public, this factor alone does not overcome the others, which weigh against the public disclosure of this information.  Having weighed the private and public interest factors, the Court thus finds that good cause exists for sealing Exhibits 3 and 4 in Plaintiff's motion.

### B.  Category 2: Lyft's System for Storing User Data

Lyft next asks for leave to seal information related to its internal system for storing user data.  (Doc. No. 83 at 13.)  Exhibits 5, 6, and 7 to Plaintiff's motion to compel contain this information.  (Doc. No. 70 at 72–87.)  Lyft largely parrots its arguments from its first request to ask the Court for leave to seal these documents.  The Court agrees that the same considerations discussed in response to Lyft's first category apply with equal force to this material.  Thus, the Court finds that good cause exists for sealing Exhibits 5, 6, and 7 to Plaintiff's motion.

### C.  Category 3: Notes from Lyft's Call with Plaintiff

Lyft then seeks to redact two images that reveal communications between Lyft's safety team and Plaintiff, as well as Lyft's internal policy for working with law enforcement.  (Doc. No.

83 at 13–14.)  These images are found in Lyft's brief in opposition to Plaintiff's motion to compel.  (Doc. No. 74 at 12.)  Lyft argues that not only are the communications themselves confidential, but they also reveal Lyft's internal process for addressing safety complaints.  (Doc. No. 83 at 13–14.)  The Court agrees.  These two images show how Lyft communicates with users who have raised safety complaints and how it works with law enforcement.  Public disclosure of these images thus could harm the privacy interests of Lyft.  On balance, the Court finds that good cause exists for redacting the two images in Lyft's brief in opposition to Plaintiff's motion to compel.

### D. Category 4: How Lyft Monitors Connected Accounts

Lyft also asks for leave to redact information that shows "how Lyft monitors connected accounts on the Lyft platform."  (Doc. No. 83 at 14–15.)  This information is contained in three documents: (1) Lyft's opposition motion, (Doc. No. 74 at 14–15), (2) Exhibit 2 to Plaintiff's motion to compel that was filed under seal, (Doc. No. 70 at 44–49), and (3) Plaintiff's publicly filed motion to compel (Doc. No. 67-1 at 5, 12, 23, 24.)  The Court is unpersuaded.  Unlike the information in the three categories addressed above, Lyft's proposed redactions here go beyond how it monitors connected accounts and extends to the name of its monitoring system.  While the Court agrees that the former implicates Lyft's privacy interests and risks competitive harm, the name of the system does not raise those concerns.  And Lyft cannot explain how the name of its system would implicate a privacy interest or risk competitive harm.  *See In re Avandia*, 924 F.3d at 671 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." (cleaned up)).  Because Lyft has not shown that "disclosure will work a clearly defined and serious injury," *id.*, the Court does not find good cause for redacting the name of Lyft's monitoring system, "shared device fingerprint," or

"device fingerprint." But the Court does find good cause for redacting information about how the monitoring system operates because that information implicates Lyft's privacy interest and risks competitive harm.

### E.  Category 5: Lyft's Internal Operations and Document Storage Policy

Next, Lyft argues that information which shows Lyft's "internal operations and document storage and retention policies" should be redacted. (Doc. No. 83 at 15.) Such information is found in two documents: (1) Lyft's opposition motion, (Doc. No. 74 at 14–15), and (2) Plaintiff's publicly filed motion to compel, (Doc. No. 67-1 at 13). The Court finds that there is good cause for the redaction in Lyft's opposition motion because that redaction covers information about the purpose and functionality of Lyft's "Zendesk" platform. (Doc. No. 74 at 20.) That information is not public, violates Lyft's privacy interests, and runs the risk of causing Lyft competitive harm. *See Sprinturf*, 216 F.R.D. at 324. Thus, the Court finds good cause for Lyft's proposed redaction of its opposition to Plaintiff's motion to compel.

But the Court does not find good cause for Lyft's request to redact information in Plaintiff's publicly filed motion to compel about how long it stored the audio recording of calls between its safety team and riders. (Doc. No. 67-1 at 13.) Lyft argues that publicly disclosing this information "would cause a risk of competitive harm." (Doc. No. 83 at 16.) The Court disagrees. For one, defense counsel told the Court that the information in Plaintiff's motion is no longer its current policy.[3] For another, this information has been on the public docket since June 26, 2024. (Doc. No. 67-1); *see Janssen Prod., L.P. v. Lupin Ltd.*, No. CIV. 2:10-05954 WHW, 2014 WL 956086, at *3 (D.N.J. Mar. 12, 2014) ("It is well established that once confidential

---

[3] Defense counsel made this representation to the Court in a telephone conference held on October 3, 2024.

9

information has been published, it is no longer confidential."); s*ee also In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published, it cannot be made secret again."). Between its presence on the public docket and the fact that it is an outdated policy, the Court finds that the risk of competitive harm is significantly reduced. That reduction tips the scales in favor of keeping this information public. Having weighed the private and public interest factors, the Court finds that there is not good cause for Lyft's proposed redaction to Plaintiff's publicly filed motion to compel.

### F. Category 6: Lyft's Workflows

Additionally, Lyft wants to protect information that relates to its internal operations, policies, and procedures when responding to safety reports filed by Lyft users. (Doc. No. 83 at 16.) Lyft claims this information is found in three documents: (1) Lyft's opposition motion, (Doc. No. 74 at 20, 25), (2) Exhibit 2 to Plaintiff's motion to compel that was filed under seal, (Doc. No. 70 at 55–57), and (3) Plaintiff's publicly filed motion to compel (Doc. No. 67-1 at 20). Upon the Court's examination of the proposed redactions, however, it appears that Lyft makes the same analytical misstep as in its request to redact information in the above fourth category. The information that it seeks to redact extends beyond the way in which it responds, tracks, and handles safety reports on its platform. Rather, Lyft seeks to redact the name of its platform, "Compass workflow," as well as the term "workflow." (Doc. No. 83-3.) Neither of these terms carries the same risk of competitive harm or threatens Lyft's privacy interests to the same extent as the disclosure of how these workflows operate. Thus, the Court cannot find good cause for redacting these terms. Lyft may, however, redact information about how it uses these workflows because this information does risk competitive harm and could violate a legitimate privacy interest. Indeed, the way it addresses safety complaints on its platforms is critical to this

litigation, suggesting that production of these documents will promote fairness and efficiency during discovery.

### G. Category 7: How Lyft Trains Its Safety Team Members

Lyft then seeks to redact information that relates to the training received by Lyft safety team members. (Doc. No. 83 at 17–18.) This information is included in its motion in opposition to Plaintiff's motion to compel. (Doc. No. 74 at 20, 25.) Lyft argues that this information is not public facing and would cause competitive harm by letting other ride share applications know how it trains its safety staff. *Id.* The Court agrees. The public disclosure of Lyft's in-house training policies would violate a legitimate privacy interest and could cause competitive harm. The Court thus finds that good cause exists for Lyft's proposed redactions of its motion opposing Plaintiff's motion to compel.

### H. Category 8: Information of Nonparty Lyft Users

Last, Lyft seeks to protect private information about Lyft users who are not parties in this case as found in portions of Exhibit 2 to Plaintiff's motion. (Doc. Nos. 70 at 43–49, 83 at 18.) Its proposed redactions are appropriate. The public disclosure of this information "will work a clearly defined and serious injury" to the privacy interests of nonparties. *See Wartluft v. Milton Hershey Sch. & Sch. Tr.*, No. 1:16-CV-2145, 2019 WL 5394575, at *7 (M.D. Pa. Oct. 22, 2019) ("[W]hile we will provisionally grant the motion that these documents be unsealed, we will also direct the defendants redact the names or other identifying information within these documents concerning these nonparties to protect those third-party privacy interests . . . ."). In addition, there is no indication that the information sought, which consists of personal information of third parties, is of importance to public health and safety. And while Lyft is a publicly traded company, it is not a public official or entity as the term was used in *Pansy*. Though this case

11

involves issues important to the public, this factor weighs only slightly, if at all, in favor of publicly disclosing the personal information of nonparties. Having weighed the private and public interest factors, the Court thus finds that good cause exists for redacting the personal information of third parties in Exhibit 2 to Plaintiff's motion.

### IV. Conclusion

For the reasons discussed above, the motion to seal is granted in part and denied in part. An appropriate order follows.