**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JANE DOE A.F.**, <br><br> Plaintiff, <br><br> *v.* <br><br> **LYFT, INC.**, <br><br> Defendant. | **CIVIL ACTION** <br><br><br> **NO. 23-3990-KSM** |

## MEMORANDUM

**MARSTON, J.**                                                    **October 10, 2024**

Plaintiff, who is operating under the pseudonym "Jane Doe A.F.," has sued the ride share company Lyft, Inc. ("Lyft") in connection with an alleged sexual assault committed by a Lyft driver.  After the Court dismissed several of Plaintiff's claims, she filed a Second Amended Complaint and added a claim for strict products liability ("Count II") based on alleged design defects in Lyft's application and algorithm.  (Doc. No. 85 at ¶¶ 171–81).

Lyft now moves to strike and dismiss Count II.  (Doc. No. 92).  Additionally, Lyft moves to dismiss Plaintiff's request for punitive damages.  (*Id.*)  Because Plaintiff did not have Lyft's consent or leave of court to add Count II, the Court will strike it under Federal Rule of Civil Procedure 12(f).  Further, the Court will dismiss this claim with prejudice because it cannot survive Lyft's motion to dismiss, so any amendment would be futile.  But the Court will deny Lyft's motion to dismiss Plaintiff's request for punitive damages.  Because we write for the benefit of the parties—who are intimately familiar with the documents and issues before us—we give only a brief recitation of the factual background and procedural history.

## I.    Background

### A.    Factual Background[1]

Plaintiff alleges that in the early morning hours of August 12, 2021, Plaintiff and her friend requested a ride in West Philadelphia through the Lyft application.  (Doc. No. 85 at ¶¶ 14–15.)  Lyft connected Plaintiff and her friend to a driver using the account name Ntiamoah Brown.  (*Id.*)  After the driver picked them up, he dropped off Plaintiff's friend at her house.  (*Id.* at ¶ 36.)  He then continued driving Plaintiff until he pulled over about a block from her destination.  (*Id.* at ¶¶ 38–40.)  With the car doors locked, the driver climbed into the backseat and pinned down Plaintiff.  (*Id.* at ¶¶ 39–40, 42.)  He then sexually assaulted her.  (*Id.* at ¶¶ 42–48.)  Terrified and shocked, Plaintiff managed to unlock one of the car doors, escape from the vehicle, and find her way home.  (*Id.* at ¶ 48.)

Later that morning, Plaintiff reported the sexual assault to Lyft.  (*Id.* at ¶ 50.)  Lyft's safety team replied to Plaintiff's report and offered to connect her with a member of the company's "escalation team" over the phone.  (*Id.* at ¶ 51.)  Plaintiff agreed and described the sexual assault.  (*Id.* at ¶¶ 52–53.)  Lyft explained that it would conduct an internal investigation into the incident.  (*Id.* at ¶ 54.)  But Plaintiff alleges that Lyft failed to do so.  (*Id.* at ¶ 67.)

During discovery in this case, Plaintiff has learned that although the Lyft application showed that Ntiamoah Brown was Plaintiff's Lyft driver, the person driving was Shariff Abdallah.  (*Id.* at ¶¶ 26.)  Abdallah, a friend of Brown's, was not an authorized Lyft driver.  (*Id.* at ¶¶ 79, 90.)  Plaintiff alleges that Abdallah had previously applied to become a Lyft driver, was rejected, and then used the same phone number from his rejected application to access Brown's account.  (*Id.* at ¶¶ 30, 76, 85–86, 89.)  Additionally, Abdallah changed the account's location

---

[1] These allegations come from Plaintiff's Second Amended Complaint.  (Doc. No. 85.)  The Court assumes their truth for purposes of this motion.

preference from New York City, where Brown lived, to Philadelphia, where he lived, and added his black 2016 Dodge Charger to the account.  (*Id.* at ¶¶ 89, 96–101.)  Using Brown's account, Abdallah drove for Lyft for almost six months.  (*Id.* at ¶ 28.)  During that time, Lyft deposited money directly into Abdallah's bank account.  (*Id.* at ¶ 101.)

### B.    Procedural History

Plaintiff filed this action against Defendants Lyft and Brown in the Court of Common Pleas for Philadelphia County on October 11, 2023.[2]  (Doc. No. 1-1.)  Lyft removed the case to this Court on October 16, 2023, on the grounds that this Court has diversity jurisdiction.  (Doc. No. 1.)  Plaintiff's original Complaint set forth six claims against Lyft: Count I: Negligence and Gross Negligence (Doc. No. 1-1 at ¶¶ 101–07); Count II: Negligence – Vicarious Liability (*id.* at ¶¶ 108–15); Count III: Negligent Hiring, Training, and Supervision (*id.* at ¶¶ 116–24); Count IV: Negligent Performance of Services (*id.* at ¶¶ 125–31); Count V: Intentional Infliction of Emotional Distress (*id.* at ¶¶ 132–38); and Count VII: Negligent Misrepresentation (*id.* at ¶¶ 163–80).  The crux of Plaintiff's Complaint was that Lyft was negligent: (1) in its hiring, training, and supervision of its drivers and (2) for not implementing safety procedures, such as:

> (d)  failing to install/require video recording devices in all Lyft vehicles;
>
> (e)  failing to install/require live video streaming device in all Lyft vehicles;
>
> (f)  failing to properly track drivers by GPS or other means, and/or react properly;

---

[2] Plaintiff filed her Complaint beyond the two-year statute of limitations for her claims.  *See* 42 Pa. Cons. Stat. Ann. § 5524.  Her Complaint is still timely, however, because Lyft agreed to toll the statute of limitations until November 9, 2023.  (Doc. No. 92-3); *see also In re AMC*, 656 B.R. 95, 108 (D. Del. 2024) ("A party may contractually agree to toll the statute of limitations against it.").

(g) failing to require all prospective drivers to utilize Live Scan, a fingerprint-based background check, which is administered through the Department of Justice and the FBI databases;

(h) failing to require all drivers to resubmit to Live Scan screening every six (6) months;

. . . .

(l) failure to install tamper-proof dash cameras in all Lyft vehicles that alert the Critical Response Team if the camera is disabled or in some way malfunctions;

. . . .

(t) failing to maintain a surveillance camera and rules requiring its continuing operation during all rides . . . .

(*Id.* at ¶ 105.)

On November 10, 2023, after meeting and conferring with Lyft, Plaintiff filed her First Amended Complaint.  (Doc. No. 17.)  In the amended complaint, Plaintiff asserted claims of negligence, gross negligence, vicarious liability, and negligent performance of undertaking to render services against both Defendants (Counts I–II, IV); negligent misrepresentation and negligent hiring, training, and supervision against Lyft (Counts III, VII); and assault and battery against Brown (Counts V–VI).  (*Id.* at ¶¶ 142–214.)  She also sought punitive damages. (*Id.* at ¶¶ 74, 165, 215.)

Lyft then moved to dismiss Plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 20.)  The Court held oral argument on April 16, 2024.  There, Lyft withdrew its motion to dismiss as to Plaintiff's claim for negligence and gross negligence (Count I).  (Apr. 16, 2024 Hr'g Tr. at 3:7–21.)  In turn, Plaintiff withdrew her claims for vicarious liability (Count II), negligent hiring, and negligent training (part of Count III).  (*Id.* at 21:5–9, 43:18–24.)  The Court later ruled on the remaining claims at issue in Lyft's motion. (Doc. No. 78.)  We dismissed, without prejudice, Plaintiff's claims for negligent supervision

(part of Count III), negligent performance of undertaking to render services (Count IV), and the request for punitive damages.  (*Id.*)  The Court also dismissed Plaintiff's claim for negligent misrepresentation (part of Count III) with prejudice, except as to two specific statements ("Our proactive safety measures are always on" and "Any time day or night, we offer real help from real humans"), which were dismissed without prejudice.  (*Id.*)  The Court then allowed Plaintiff "to file a second amended complaint as to the claims dismissed without prejudice, to the extent she can do so consistent with the Court's analysis in this Memorandum."  (Doc. No. 77 at 20–21.)

On August 2, 2024, Plaintiff filed her Second Amended Complaint.  (Doc. No. 85.)  In this complaint, she kept her claim for negligence and gross negligence against Lyft (Count I), (*id.* at ¶¶ 163–70), and she added a new claim against Lyft for strict products liability (Count II), (*id.* at ¶¶ 171–81).[3]  Along with her new claim, Plaintiff made several new allegations.  First, she alleged that the person who picked her up and assaulted her was not Ntiamoah Brown, but rather an unauthorized driver who was using Brown's Lyft account.  (*See id.* at ¶¶ 15, 26, 32, 36, 38–45.)  Second, she alleged that "[d]espite Lyft being aware of the pervasive problem of sexual assaults occurring during Lyft rides, it failed to take necessary steps, including but not limited to changing its app and/or algorithm, to prevent or reduce the incidence of sexual assault and/or rape in any meaningful way."  (*Id.* at ¶ 150.)  Finally, she added allegations that "[t]he Lyft app and its algorithm were in a defective condition," (*id.* at ¶ 153), it failed to provide "adequate warnings," (*id.* at ¶ 176), and its "risk and hazards . . . far outweighed its utility or benefit," (*id.* at ¶ 179).

---

[3] The Second Amended Complaint also dropped "Ntiamoah Brown" as a defendant.

## II.      Discussion

Lyft now moves to dismiss the Second Amended Complaint in part.  In its motion, Lyft first argues that the Court should dismiss Count II under Federal Rule of Civil Procedure 12(f) because Plaintiff violated Federal Rule of Civil Procedure 15(a)(2) by filing that new claim without Lyft's consent or the court's leave.  (Doc. No. 92-2 at 16–18.)  In the alternative, Lyft argues that the Court should also dismiss that claim under Federal Rule of Civil Procedure 12(b)(6) because it is time barred on its face and does not "relate back" to Plaintiff's original complaint.  (*Id.* at 18–29.)  Last, Lyft says that Plaintiff's request for punitive damages should be dismissed under Rule 12(b)(6) because Plaintiff's allegations do not amount to reckless conduct. (*Id.* at 29–32.)  The Court addresses each argument in turn.

### A.      Plaintiff Violated Federal Rule of Civil Procedure 15(a)(2)

Federal Rule of Civil Procedure 12(f) lets courts "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Snider for Goldhirsh v. State Farm Fire & Cas. Co.*, 644 F. Supp. 3d 141, 147 (E.D. Pa. 2022) (quotation omitted).  In the Third Circuit, "district courts . . . use Rule 12(f) to strike unauthorized amendments to pleadings." *Abrams v. eResearch Tech., Inc.*, 703 F. Supp. 3d 593, 600 (E.D. Pa. 2023).

Though the "court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," *N. Penn. Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994) (quotation marks omitted), "motions to strike are generally viewed with disfavor," *Great W. Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993).  A motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice." *N. Penn.*

*Transfer, Inc.*, 859 F. Supp. at 158 (quotation marks omitted).  The Court finds that justice requires this remedy here.

To begin, under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Here, the Court permitted Plaintiff "to file a second amended complaint *as to the claims dismissed without prejudice*, to the extent she can do so consistent with the Court's analysis in this Memorandum."  (Doc. No. 77 at 20–21 (emphasis added).)  Plaintiff concedes that "the Court's opinion *did* place limitations on the claims for which Plaintiff could amend." (Doc. No. 98 at 13.)  Plaintiff further agrees that her products liability claim exceeded the scope of the Court's leave to amend under Rule 15(a)(2).  (*Id.*)  Thus, the Court will strike this claim for Plaintiff's failure to comply with Rule 15(a)(2).  *See Mala v. Banco Popular, P.R.*, No. 3:23-CV-0017, 2024 WL 477186, at *1 (D.V.I. Feb. 7, 2024) (striking Plaintiff's amended complaint for violating Rule 15(a)(2)); *see also U.F.C.W. Loc. 56 Health & Welfare Fund v. J.D.'s Mkt.*, 240 F.R.D. 149, 154 (D.N.J. 2007) ("[F]ailure to seek the required leave of court when adding a new allegation is grounds for striking that allegation." (internal quotation marks omitted)).

Although the Court strikes Plaintiff's claim for failing to comply with Rule 15(a)(2), Plaintiff asks the Court for leave to amend her complaint to re-add the strict products liability claim.  (Doc. No. 98 at 13.)  Rule 15 instructs that a "court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This instruction signals the "liberal pleading philosophy of the federal rules[,]" which "limit[s] a district court's discretion to deny leave to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).  Even still, however, a court may deny leave "if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party," *id.*, or "on the basis that an amendment fails to state a cause of

action and is futile," *McCoy v. Cwork Sols., LP*, No. CV 18-4079, 2022 WL 1275005, at *5 n.6 (E.D. Pa. Apr. 28, 2022) (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). The Court turns to the latter issue now.

### B.      Plaintiff's Products Liability Claim Is Time Barred

Whether the Court should grant Plaintiff leave to amend depends on whether her products liability claim can survive Lyft's motion to dismiss on statute of limitations grounds. (Doc. No. 92-2 at 18.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement.'" *Id.* Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (quotation marks omitted).

That said, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Bell Atl. Corp.*, 550 U.S. at 555 (explaining that the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").

In its motion, Lyft argues that Plaintiff's strict products liability claim was filed beyond the statute of limitations and does not relate back to her original complaint. (Doc. No. 92-2 at

18–29.)  At the motion-to-dismiss stage, "a court may entertain a motion to dismiss on statute of limitation grounds . . . ."  *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (citing *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)).  Plaintiff need not plead facts to overcome this affirmative defense.  *Id.*  Nor can a court dismiss a claim based on the statute of limitations "when the pleading[s] do[ ] not reveal when the limitations period began to run . . . ."  *Id.* (internal quotation marks omitted).

Here, there is no dispute that Plaintiff brought her claim after the statute of limitations had expired.  Under Pennsylvania law, the statute of limitations for claims of strict products liability is two years.  *See* 42 Pa. Cons. Stat. Ann. § 5524; *Barnes v. Am. Tobacco Co. Inc.*, 984 F. Supp. 842, 857 (E.D. Pa. 1997).  "The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises."  *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 231 (3d Cir. 2003) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)).  In her Second Amended Complaint, Plaintiff alleges that she was "sexually assaulted by her Lyft driver on August 12, 2021."  (Doc. No. 85 at ¶ 6).  Yet, she failed to bring this claim until August 2, 2024—almost three years after her right to sue arose.  (Doc. No. 85.)  Thus, based on Plaintiff's own pleadings, her products liability claim is barred by the statute of limitations.

In her brief, Plaintiff does not contest that she brought her products liability claim beyond the statute of limitations period.  Rather, she argues that her claim is timely because it "relates back" to her original complaint, which was filed on October 11, 2023.  (Doc. No. 98 at 6.)  Under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . [it] asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  This rule aims "to balance the interests of the defendant protected by the

statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).  This balance is reflected in the fact that the Rule lets a plaintiff "sidestep an otherwise-applicable statute of limitations," but, for the Rule to apply, "the already commenced action [must] sufficiently embrace[ ] the amended claims." *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012) (internal quotation marks omitted).

Plaintiff argues that her new claim relates back to her original complaint because it is "based upon [the] same core of operative facts." (Doc. No. 98 at 8.)  But that is not enough for the Court to allow relation back.  True, "Rule 15(c) involves a search for a common core of operative facts in the two pleadings." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).  Yet "Rule 15(c) is not merely an identity of transaction test such as the rules governing joinder of claims or parties." *Glover*, 698 F.3d at 145 (internal quotation marks omitted).  Rather, "only where the opposing party is given 'fair notice of the *general fact situation and the legal theory* upon which the amending party proceeds' will relation back be allowed." *Id.* (emphasis added) (quoting *Bensel*, 387 F.3d at 310).

Although Lyft had notice that Plaintiff alleges that she was sexually assaulted by her Lyft driver, these facts did not give Lyft notice that Plaintiff would pursue a legal theory based on a design defect in Lyft's application and algorithm.  The crux of Plaintiff's original complaint was that Lyft negligently hired, trained, and supervised its drivers and was negligent in failing to implement certain safety-related policies and procedures.  (*See generally* Doc. No. 1-1.)  And, while Plaintiff alleges that Lyft failed to use dash cameras in its cars and did not use fingerprinting as part of its hiring process, (Doc. No. 1-1 at ¶ 105), these allegations do not suggest that the Lyft's application or algorithm was unreasonably dangerous or contained a

design defect.  Rather, when viewed in the context of the entire complaint, these allegations related only to Lyft's alleged negligence.  *See Sullivan v. Werner Co.*, 306 A.3d 846, 860 (Pa. 2023) (explaining that "[t]he duty involved in strict liability—to produce and/or market a product without a defective condition unreasonably dangerous—is different from the duty of due care in negligence" (internal quotation marks omitted)).

Indeed, nowhere did Plaintiff's original complaint mention a possible design defect or issue in Lyft's algorithm or application.  Nor did her original complaint contain any of the buzzwords, such as "product," "defect," or "products liability," that attend a strict products liability claim.  *See Blake v. J.P. Morgan*, 259 F. Supp. 3d 249, 263 (E.D. Pa. 2017) (finding proposed RICO claims do not relate back, in part, because "the original complaint is void of any language suggesting an 'enterprise' or any of the other buzzwords that attend a RICO claim").  Plus, after months of discovery on Plaintiff's negligence claims, she now seeks to pivot to a strict products liability theory.  Her claim, which will "significantly alter the nature of [this] proceeding by injecting [a] new and unanticipated claim[,]" calls for "far more cautious[ ]" treatment by the Court.  *Glover*, 698 F.3d at 146 (citing *United States v. Hicks,* 283 F.3d 380, 388 (D.C. Cir. 2002)).

Because Plaintiff's allegations did not give Lyft fair notice of the legal theory that she now pursues, the Court finds that her products liability claim does not relate back to her original complaint.  *See Glover*, 698 F.3d at 146 ("[I]t is well-established that the touchstone for relation back is fair notice . . . .").  Without the benefit of Rule 15(c)(1)(B), Plaintiff cannot sidestep the statute of limitations for her products liability claim.  So, the Court dismisses Count II with prejudice under Rule 12(f) because this claim cannot survive Lyft's motion to dismiss and thus

granting Plaintiff leave to add this claim would be futile. *See McCoy*, 2022 WL 1275005, at *5 n.6.

### C.   Plaintiff's Claim for Punitive Damages Survives

Last, the Court turns to Lyft's motion to dismiss Plaintiff's demand for punitive damages. (Doc. No. 92 at 29–32.)  Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (quoting *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)).  Punitive damages may be stricken at the motion to dismiss stage, but only where there is "no foundation in the complaint for a demand for punitive damages." *Boring v. Google Inc.*, 362 F. App'x 273, 283 (3d Cir. 2010).  To survive such scrutiny, allegations need not "'conclusively establish recklessness'; rather, 'the court's obligation is merely to determine whether they create a plausible inference of recklessness, one which discovery will further substantiate.'" *White v. Bush*, No. CV 20-2059-KSM, 2021 WL 2255981, at *6 (E.D. Pa. June 3, 2021) (quoting *Gula v. Advanced Cargo Transp., Inc.*, Civil No. 3:13-cv-226, 2013 WL 1899900, at *3 (M.D. Pa. May 7, 2013)).

Earlier in this case, the Court dismissed Plaintiff's request for punitive damages.  (Doc. No. 77 at 20.)  The Court "fail[ed] to see a basis for plausibly finding that Lyft fostered any evil motive or demonstrated a reckless indifference to Plaintiff's rights."  (*Id.*)  But Plaintiff was given leave to file another request because "she had additional facts to add to her complaint on this front."  (*Id.*)  Plaintiff has since added factual allegations relating to her request for punitive damages.  Plaintiff now alleges that Lyft was reckless for:

> (i) failing to identify obvious fraud indicators that demonstrated
> Shariff Abdallah was driving for Lyft using Brown's Lyft account;
>
> (j) failing to recognize Lyft's payment to Brown . . . were being
> deposited in Shariff Abdallah's bank account; [and]

> (k) failing to recognize that Brown['s] . . . account phone number was being edited to reflect the phone number associated with Shariff Abdallah's [rejected] Lyft account profile;

(Doc. No. 85 at ¶ 168(i)–(k).)  In addition, Plaintiff alleges that Lyft should have investigated further once it flagged that a new device was used to log in to Brown's account in a city almost a hundred miles away.  (*Id.* at ¶¶ 90–93.)

Lyft argues that these new allegations do not rise to the level of recklessness.  (Doc. No. 92-2 at 31.)  Although a close call, the Court disagrees.  Accepting Plaintiff's factual allegations as true, Lyft knew that: (1) a new device logged in to Brown's Lyft account, (2) the device had the same phone number as Shariff Abdallah's rejected Lyft application, (3) the device added a new car to Brown's account; and (4) the device used Brown's account from a city almost a hundred miles away for six months.  (Doc. No. 85 at ¶¶ 30, 76, 85–86, 89, 92, 96, 100, 103.)  Lyft also made direct deposits into the bank account of Abdallah, who was not the Lyft account holder.  (*Id.* at ¶ 101.)

Plaintiff alleges that Lyft knew about this concerning activity but did not act upon it.  In doing so, Lyft "disregard[ed] . . . a risk . . . so obvious that [it] must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."  *Dubose v. Quinlan*, 125 A.3d 1231, 1240 (Pa. Super. Ct. 2015) (quoting *Smith v. Brown*, 423 A.2d 743, 745 (Pa. Super. Ct. 1980)).  The Court thus finds that Plaintiff has stated a plausible basis that Lyft demonstrated a reckless indifference to her rights.  At this stage in the litigation, the Court will deny Lyft's motion to dismiss Plaintiff's punitive damage request.

Lyft may renew its punitive damages arguments later on in this case.  Indeed, this is often the preferred way to litigate requests for punitive damages.  *See Castelli-Velez v. Moroney*, No. 3:20-CV-00976, 2021 WL 978814, at *4 (M.D. Pa. Mar. 16, 2021) ("[I]t would be premature to delve into the factual determinations required for an award of punitive damages at the motion to

dismiss stage."); *see also Harvell v. Brumberger*, No. 3:19-CV-2124, 2020 WL 6947693, at *8 (M.D. Pa. Nov. 4, 2020), *report and recommendation adopted*, No. 3:19-CV-2124, 2020 WL 6946575 (M.D. Pa. Nov. 25, 2020) ("[B]ecause the question of whether punitive damages are proper often turns on the defendants' state of mind, this question frequently cannot be resolved on the pleadings alone but must await the development of a full factual record at trial.").

### III.    Conclusion

For the reasons discussed above, the Court grants Defendant's motion to strike Count II of Plaintiff's Second Amended Complaint.  Count II is dismissed without leave to amend.  The Court denies Defendant's motion to dismiss Plaintiff's request for punitive damages.  An appropriate order follows.